The STATE of Texas, Appellant,

v.

Ben THOMAS, Individually, and d/b/a Ben Thomas, Appellee.

No. 588.

Court of Civil Appeals of Texas, Tyler.

Oct. 28, 1971.

Rehearing Denied Dec. 9, 1971.

Texas Department of Health, Hal L. Nelson, Robert H. Hyatt, Austin, for appellant.

J. Kearney Brim, Sulphur Springs, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from an order denying a temporary injunction which was sought by the State of Texas to restrain and enjoin Ben Thomas, individually and doing business as Ben Thomas, appellee herein, from operating a custom meat processing establishment in alleged violation of the Texas Meat and Poultry Inspection Act of 1969, Article 4476–7, Vernon's Ann.Tex. Civ.St., the federal Wholesome Meat Act, as amended, 21 U.S.C. supp., sec. 601 et seq., and such applicable rules and regulations duly promulgated or adopted pursuant to such statutes. Ben Thomas, appellee, is engaged in a custom meat processing business. The processing involves chilling, slicing or grinding and packaging of animals brought to appellee by the owners of the animals. Appellee neither slaughters animals nor buys or sells any animals which he processes but charges a fee per pound for his services.

On December 4, 1970, an authorized agent of appellant visited appellee's business for the purpose of inspecting and to therefore ascertain whether or not the premises and appellee's operation met certain standards as to sanitation, equipment, and packaging which appellant contends pertain to appellee's type of business. Upon inspection appellee was notified that his plant did not meet certain minimum specifications and standards and was advised as to the remedial actions which would be required in order to bring the plant up to acceptable standards as required by the Texas Meat and Poultry Inspection Act and the rules and regulations relating to it. On January 15, 1971, an authorized agent of the appellant again visited appellee's business and upon inspection found that the business was still in a substandard condition. Subsequently, on February 25, 1971, appellant made application to the 62nd District Court, Hopkins County, Texas, for a temporary restraining order and temporary injunction, which restraining order was granted pending a hearing on the application for temporary injunction. Upon the subsequent hearing, the application for temporary injunction was denied. Upon motion by appellant the trial court made and filed certain findings of fact and conclusions of law, upon which conclusions of law the appellant predicates this appeal.

Appellant contends that the trial court erred in concluding as a matter of law that (1) appellee is not amenable to the Texas Meat and Poultry Inspection Act, Article 4476–7, V.T.C.S., in that appellee is not in "commerce" as that term is used in the Act, and (2) Article 4476–7, V.T.C.S., is indefinite and vague as to strictly "custom" meat processing or slaughtering operations of the type engaged in by appellee. Appellant also complains that the denial of the trial court to grant the temporary injunction constituted an abuse of its discretion because the appellee is and was amenable to Article 4476–7, V.T.C.S.

It is appellee's contention that he is not amenable to regulation because he is not in "commerce" as defined by the Act. He further contends that because this is a case first interpreting the Act, the court must look to the language of the statute to derive the meaning of the word "commerce." He also contends that since the Act speaks in terms of "sale", "offer for

sale", "transportation", "receive for transportation" this court must give this narrow meaning to the word "commerce." We do not feel that we are limited to this narrow definition of "commerce." Article 4476–7, section 1(f), V.T.C.S., defines "intrastate commerce" as "commerce within this state." Since Gibbons v. Ogden, 9 Wheat 1, 22 U.S. 1, 6 L.Ed. 23, the courts have given a broad meaning to the term "commerce."

> "* * * Commerce, undoubtedly, is traffic, but it is something more—it is intercourse. Hence, although the term includes traffic, it is much broader—it is the equivalent of the phrase 'intercourse for the purpose of trade' and comprises every species of commercial intercourse. Furthermore, it includes every species of communication and every species of transmission of intelligence, whether for commercial purposes or otherwise. * * *" 15 American Jurisprudence 2d, Commerce, Section 2.

We adhere to the "general definition of commerce" and therefore hold that the appellee is within "commerce" as that term is used in the statute here involved.

Appellant by his second point of error complains of the conclusion of the trial court that Article 4476–7, V.T.C.S., is "vague" and "indefinite" as to strictly "custom" meat processing operations of the type engaged in by the appellee. Appellant alleged violations of Section 1(j) (4) and Section 10(a) and (b) of Article 4476–7, V.T.C.S., and certain violations of the Federal Rules and Regulations adopted pursuant to 21 U.S.C. supp., sec. 601 et seq., and made applicable to appellee under Section 13 of Article 4476–7, V.T.C.S Section 13 of the state Act gives the State Commissioner of Health the following power: "* * * The commissioner shall adopt and use federal rules and regulations, as amended, and federal procedures, as amended, for meat inspection and/or poultry inspection wherever these said rules, regulations and procedures are appli-

cable." These federal rules and regulations are clear in their regulation of custom slaughtering and processing in the areas of sanitation and labeling requirements.

The state Act in Sections 15 and 409 further, we feel, establishes the amenability of the appellee to the state Act and thereby the federal rules and regulations. Section 15 of Article 4476–7, V.T.C.S., provides:

> "The provisions of this title requiring inspection of the slaughter of animals and the preparation of the carcasses, parts thereof, meat, and meat food products at establishments conducting such operations shall not apply to the slaughtering on his own premises, by any person, of animals, and the preparation by him and transportation in intrastate commerce of the carcasses, parts thereof, meat, and meat food products of such animals exclusively for use by him and members of his household and his nonpaying guests and employees. The adulteration and misbranding provisions of this title, other than the requirement of the inspection legend, shall apply to articles which are not required to be inspected under this section."

It is clear, we think, from the language of Section 15 that only one exception to the provisions of Article 4476–7 exists, and we believe that the rule that the express mention or enumeration of one person, thing, consequence or class is tantamount to an express exclusion of all others is therefore applicable. Section 15 exempts only one person or class from the slaughtering and processing requirements of the statute and therefore by implication includes all others, including "custom" processors, within the regulation requirements of the statute. It should be further noted that by the last sentence of Section 15, even the excluded articles of Section 15 are not exempted from the adulteration and misbranding provisions of the Act.

A further and even more explicit description of these covered under the state

Act is found in Section 409 of the state Act. Section 409 provides:

> "The requirements of this Act shall apply to persons, firms, corporation establishments, animals, and articles regulated under the Federal Meat Inspection Act or the Federal Poultry Products Inspection Act only to the extent provided for in said Federal Acts and any future amendments thereto."

The fact that purely custom slaughtering and meat processing operations are subject to regulation as to sanitation, equipment and labeling requirements is clearly shown in the federal rules and regulations which were promulgated pursuant to Section 623 of the federal Act. These rules and regulations were adopted by the Texas State Commissioner of Health pursuant to Section 13 of the state Act and made applicable to appellee, as a custom processor by operation of Sections 15 and 409 of the state Act. In our opinion Article 4476–7 is not vague and indefinite as to strictly "custom" meat processing operations because of the operation of Sections 13, 15 and 409 of the state Act.

■ In appeals from interlocutory orders in injunction cases the sole question is whether the trial court abused its discretion in entering the order appealed from. Traweek v. Shields, 380 S.W.2d 131, 134 (Tex.Civ.App., Tyler, 1964, n. w. h.) ; Janus Films, Inc. v. City of Fort Worth, 163 Tex. 616, 358 S.W.2d 589 (1962) ; Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460, 463 (1952).

As required by law we have reviewed all of the evidence and legitimate presumptions consistent with the record in the light most favorable to the judgment of the trial court's exercise of discretion in denying the temporary injunction. Brooks Gas Corporation v. Sinclair Oil & Gas Co., 408 S.W.2d 747, 752 (Tex.Civ.App., Houston, 1966, writ ref., n. r. e.).

Believing that the trial court abused its discretion in denying the temporary injunction, the judgment appealed from is reversed and this cause remanded to the District Court with instructions to issue a temporary injunction as prayed for.

Reversed and remanded with directions.

McKAY, Justice (dissenting).

I respectfully dissent.

The question here is whether there was an abuse of discretion by the trial court in refusing to grant a temporary injunction against appellee. It is my opinion that it does not *clearly appear* there was an abuse of such discretion.

For appellee to be subject to Article 4476–7, V.A.T.S., he must be in commerce. The majority has chosen to give the word "commerce" a broad, all-encompassing meaning which I feel the legislature did not intend. The statute defines "intrastate commerce" as "commerce within this State." Section 1 of Title I of Article 4476–7, states "(a)s used in this Act, except as otherwise specified, the following terms shall have the meanings stated below * *" and following this statement in subsection (f), "intrastate commerce" is defined as quoted above. The statute has *otherwise specified* the meaning of the word "commerce." The language of the statute speaks of commerce in terms of "sale," "offer to sell," "transportation," "receive for transportation," and "prepared solely for intrastate commerce." The statute speaks of commerce only in this manner. It does not speak of commerce as "commerical intercourse," but only in the limited terms enumerated above.

In 53 Tex.Jur.2d, section 147, page 214, it is stated:

> "In determining the meaning of a word employed in a statute, the inquiry is not as to its abstract meaning but as to the sense in which it is used * * *

(h)ence in every case the particular meaning depends on, and must be determined by, the context and subject matter, and the evident intention of the legislature."

In addition, when the legislature defines a word, the definition, if clear and unambiguous, is binding upon the courts as an expression of legislative intent, regardless of the meaning of the word in its usual or customary usage. 53 Tex.Jur.2d, section 151, page 218, and cases cited therein.

The record shows that appellee had not bought or sold or transported any meat, nor had he offered to sell, received for transportation or prepared any meat for any commerce. It would appear that the intention of the legislature was that one would be in commerce who did any of the enumerated acts listed in the statute within this State. Therefore, I agree with the conclusion of law of the trial court that appellee is not engaged in commerce within the meaning of Article 4476–7, V.A.T.S.

It is not our function to legislate. That power is given to the legislature under the Constitution. We should not attempt to supply legislative intent where the act of the legislature is clear and unambiguous. The term "custom processor" or the description of such an operation is not to be found in the statute. It is my opinion that if appellee is not covered by the statute, the adoption of Federal rules and regulations does not change his status.

In addition, appellant in oral argument suggested that if this Court did not construe the statute as applying to appellee, then the Federal Government would intervene and regulate custom meat processing as done by appellee. That question should not be considered in passing upon this appeal.

I would affirm the judgment of the trial court.