SMITH ET AL. v. ILLINOIS BELL TELEPHONE COMPANY.

THE SAME v. THE SAME.

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Nos. 193, 670. Argued March 5, 1926.—Decided April 12, 1926.

1. An order granting an interlocutory injunction is merged in a decree of permanent injunction, and, when both are appealed from, the appeal from the former will be dismissed. P. 588.

2. A suit against a state commission to enjoin enforcement of confiscatory rates will not be defeated by the objection that the plaintiff should first have exhausted its legislative remedy by filing a new application for increases, when the plaintiff's application for that purpose had been uniformly recognized by the commission as pending before it and the objection was purely technical. P. 590.

3. A public service company, suffering from confiscatory rates, is not required to await indefinitely a decision by the rate-making tribunal on a pending application before applying to a federal court for equitable relief. P. 591.

4. In a suit to restrain a state commission from enforcing confiscatory telephone rates, the telephone subscribers are represented by the commission and bound by the decree. P. 592.

Affirmed.

APPEALS from an interlocutory order and a final decree of the District Court, enjoining members of a state commission and the state Attorney General from enforcing confiscatory telephone rates.

*Messrs. Harry C. Heyl* and *R. H. Radley,* with whom *Messrs. Oscar E. Carlstrom* and *S. F. McGrath* were on the brief, for appellants.

*Mr. William D. Bangs,* with whom *Messrs. Philip B. Warren* and *Charles M. Bracelen* were on the brief, for appellee.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The telephone company, an Illinois corporation, owns and operates a telephone system in the City of Peoria and vicinity. It brought suit on June 18, 1924, against appellants (members of the state Commerce Commission and Attorney General of the State of Illinois) to enjoin them from enforcing or attempting to enforce a schedule of rates alleged to be confiscatory, and from taking any steps or proceedings against the company by reason of the collection by it of rates and charges under another and higher schedule. A motion to dismiss the bill was overruled; and, upon the bill and attached exhibits and affidavits, appellants refusing to plead further, a permanent injunction in accordance with the prayer was granted by the lower court. The appeal in No. 670 is from that decree.

The appeal in No. 193 is from an order, previously entered, granting an interlocutory injunction. A motion to dismiss that appeal on the ground that the order for the interlocutory injunction had become merged in the final decree, was submitted but consideration postponed to the hearing on the merits. The motion is now granted

and the appeal in No. 193 dismissed. *Shaffer* v. *Carter,* 252 U. S. 37, 44; *Pacific Tel. Co.* v. *Kuykendall,* 265 U. S. 196, 205. In the cases cited, both interlocutory and permanent injunctions had been denied; here they were granted; but the record discloses no reason which prevents the same principle from being applicable.

The averments of the bill, which, upon this record, must be taken as true, disclose the following facts: The operations of the company were conducted with reasonable economy. For the year 1921, the net revenues, after payment of operating expenses and taxes, were, in round figures, $46,000; for the year 1922 there was a deficit of over $48,000; for 1923, a deficit of nearly $65,000; and a deficit for each month of the year 1924 preceding the filing of the bill. The fair value of the property, including working capital, material and supplies, and going value, was at least $3,800,000.

In July, 1919, the predecessor in ownership of the company filed with the commission a schedule of rates covering the telephone service in question, which the commission, by final order after a hearing, approved. Prior to that order, however, the predecessor of the company had filed with the commission a second schedule of increased rates, to become effective May 1, 1920. The commission first suspended the effective date of this schedule until August 29, 1920; and then, by successive orders, until February 26, 1921, August 26, 1921, and February 23, 1922. The present company, in December, 1920, succeeded to the property and rights of its predecessor.

During 1920, hearings were had before the commission in respect of the justice and reasonableness of the rates proposed by the second schedule, but no determination of the matter was reached. The commission, although often requested by the company to do so, thereafter failed and refused to hold further hearings, but on October 31, 1921, entered an order purporting permanently to sus-

pend, cancel and annul the second schedule. A rehearing was applied for and denied.

Thereupon, an appeal was prosecuted to the Circuit Court of Peoria County; and that court, on April 6, 1922, reversed the commission's order and remanded the cause for further proceedings. The commission redocketed the cause and had hearings in June, July and September, 1922, after which the company filed its written motion requesting the commission to make effective a temporary schedule of rates pending a final determination. This motion was denied on September 28, 1922. On July 5, 1923, the company called attention to the delay in the determination of the cause, and to the fact that the revenues derived from the operation of the Peoria exchange fell short of meeting its operating expenses, and requested the commission to set the cause for an early hearing. This request was ignored; and the commission ever since has failed and refused to determine the issues in the cause or to determine whether the rates and charges provided in the second schedule are just and reasonable; but has continued in effect the rates and charges contained in the first schedule approved by it. These rates not only do not yield a fair return, but are insufficient to pay the operating cost of rendering telephone service to the subscribers and patrons of the exchange. Finally, it is alleged that the company is deprived of its property without due process of law and is denied the equal protection of the law, in violation of the Fourteenth Amendment to the federal Constitution.

This conclusion, which necessarily results from the facts, is not seriously challenged, but a reversal of the decree below is sought on the ground that the company, prior to filing its bill, had not exhausted its legislative remedies. The argument seems to be that the second proposed schedule of rates, filed while the first was pending, purported to cancel the first schedule; that the order putting into

force the rates in the first schedule was in effect a finding
against the second and put an end to it; that no legal
application for an increase of rates has since been made:
therefore, when the suit was brought, nothing was before
the commission upon which that body could lawfully act.
The short answer is that the commission, after disposing
of the first schedule, had uniformly treated the second as
pending; had held hearings and made interlocutory orders
in respect of it; had entered an order for its permanent
suspension; after reversal by the state court on appeal,
by which tribunal it was regarded as properly pending,
had restored it to the docket for further proceedings; and
had held further hearings.   To say now that all this shall
go for naught and that the company must institute an-
other and distinct proceeding, would be to put aside sub-
stance for needless ceremony.

It thus appears that, following the decree of the state
court reversing the permanent order in respect of the
second schedule and directing further proceedings, the
commission, for a period of two years, remained practically
dormant; and nothing in the circumstances suggests that
it had any intention of going further with the matter.
For this apparent neglect on the part of the commission,
no reason or excuse has been given; and it is just to say
that, without explanation, its conduct evinces an entire
lack of that acute appreciation of justice which should
characterize a tribunal charged with the delicate and im-
portant duty of regulating the rates of a public utility
with fairness to its patrons, but with a hand quick to
preserve it from confiscation.   Property may be as ef-
fectively taken by long-continued and unreasonable delay
in putting an end to confiscatory rates as by an express
affirmance of them; and where, in that respect, such a
state of facts is disclosed as we have here, the injured
public service company is not required indefinitely to
await a decision of the rate-making tribunal before apply-

ing to a federal court for equitable relief. The facts, which the motion to dismiss conceded, present a far stronger case for such relief than any of the cases with which this court dealt in *Okla. Gas Co.* v. *Russell*, 261 U. S. 290, 293; *Prendergast* v. *N. Y. Tel. Co.*, 262 U. S. 43, 49; *Pacific Tel. Co.* v. *Kuykendall, supra,* p. 204; and *Banton* v. *Belt Line Ry.*, 268 U. S. 413, 415.

Some complaint is made to the effect that the decree attempts to bind persons not parties to the suit, including thousands of subscribers, and to prohibit appellants from enforcing in the future any legislative remedy for excessive charges, hereafter imposed, however unreason able they may be. As to the first branch of the complain it is only necessary to say that the commission represents the public and especially the subscribers, and they are properly bound by the decree. *In re Engelhard,* 231 U. S. 646, 651. As to the other objection, there is nothing in the decree, rightly construed, which attempts to curtail or could curtail the legislative or rate-making powers of appellants to proceed hereafter under the state law, subject to such limitations, if any, as may be required by the doctrines of *res judicata,* ordinarily applicable in such cases.

*Decree affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.