# SECURITIES AND EXCHANGE COMMIS-
## SION v. OKIN.

### Nos. 320, 321.

Circuit Court of Appeals, Second Circuit.

Aug. 18, 1943.

Samuel Okin, of New York City, pro se, appellant.

John F. Davis, Sol., Milton V. Freeman, Asst. Sol., and Mayer U. Newfield, Sidney H. Willner, and Samuel Binder, Attys., of Securities and Exchange Commission, all of Philadelphia, Pa., for appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The appellant is the owner of shares of common stock of Electric Bond and Share Company, a registered holding company subject to the jurisdiction of the Securities and Exchange Commission. In November 1942 he filed with the Commission a letter which the Commission charged was violative of its rules regulating the solicitation of proxies. It thereupon filed the present action to obtain a preliminary and a permanent injunction restraining Okin from mailing to stockholders the proposed November letter.[1] On January 7, 1942 a preliminary injunction was granted enjoining the circulation of specified types of false and misleading statements. On January 11th, Okin filed with the Commission a modified proxy-soliciting letter, and a day or two later he mailed the same to stockholders, although informed by members of the Commission's staff that in their opinion it contained false and misleading statements of the prohibited character. A motion to adjudge him liable for civil contempt was made by the Commission on January 20th and was granted by the court by an order entered May 11, 1943. From this he appealed, and a stay of enforcement was granted pending determination of the appeal.

In the meantime Okin had appealed from the injunction order of January 7th and from the order of March 2nd resettling the injunction. The Commission has moved to dismiss the appeals from these two orders because on May 18, 1943, after trial of the case, the court entered final judgment making the preliminary injunction permanent.[2] The motion must be granted on the authority of Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 588, 46 S.Ct. 408, 70 L.Ed. 747; Sterling v. Constantin, 287 U.S. 378, 386, 53 S.Ct. 190, 77 L.Ed. 375; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 98 F.2d 115.

Dismissal of these appeals is not prejudicial to Okin's appeal from the contempt order, for even if the preliminary injunction were erroneous, which we do not intimate, that would furnish no excuse for disobedience of it since the court had jurisdiction to grant it. Howat v. State of Kansas, 258 U.S. 181, 189, 42 S.Ct. 277, 66 L.Ed. 550; Brougham v. Oceanic Steam Nav. Co., 2 Cir., 205 F. 857; Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 2 Cir., 86 F.2d 727.

Nor can we accept the appellant's argument that resettlement of the injunction after he had committed the acts charged as a violation of it,[3] deprived the court of power to adjudge him in contempt. Resettlement of an order may cause the prior order to become a "nullity" for purposes of appeal. Young v. White, 158 App.Div., N.Y., 763, 143 N.Y.S. 934. But no authority has been cited, nor can be found, we believe, in support of the extraordinary contention that by obtaining a formal resettlement of an injunction, the defendant secures immunity from liability for past disobedience of a provision which is continued in effect by the order of resettlement. It is true that liability for civil contempt cannot survive reversal of the injunction decree which was disobeyed. Salvage Process Corp. v. Acme Tank Cleaning Process Corp., supra. There is no analogy, however, between that situa-

---

[1] Similar litigation involving earlier proxy solicitation material was before this court in Securities & Exchange Comm. v. Okin, 2 Cir., 132 F.2d 784.

[2] An appeal by Okin from the permanent injunction is pending in this court.

[3] Okin's motion for resettlement was made on January 21, 1943, the day following service upon him of the Commission's motion to adjudge him guilty of contempt.

tion and the case at bar where the resettlement order made no change in the injunction provisions which Okin is found to have disobeyed.

Paragraph (b) of the injunction enjoined the defendant during the pendency of the action from using the mails to solicit any proxy in respect to the common stock of Electric Bond and Share Company by means of any "communication containing any statement which at the time and in the light of the circumstances under which it was made, is false or misleading with respect to any material fact, or omits to state any material fact necessary to be stated in order to make the statements therein not false or misleading concerning" thirteen separately listed topics, "or (14) any other statement," false or misleading, "similar to those specifically set forth above or of similar purport or object." In its motion to punish Okin for contempt the Commission relied upon six specific objections to the January letter which he mailed to stockholders. Four of the six charges were decided in his favor. In respect to only two was he held to have violated the injunction.

■■ The first violation is based upon an expression of opinion that the operation of Electric Power and Light Corporation and American Power and Light Company and its subsidiaries was causing substantial losses to Electric Bond and Share Company. The challenged sentence on this subject read as follows: "Although many millions of the company's assets had been invested in the stock of these companies, their market value had fallen to such an extent that they did not represent more than approximately three (3%) per cent of the value of the entire assets of the company and the income therefrom was so comparatively small with respect to the entire income of the company that it was obvious that the operation of these many companies was not only in my opinion causing substantial losses to the Electric Bond and Share Company but in addition was for the benefit solely of enabling the business associates and friends of the management of Electric Bond and Share Company to continue to receive very lucrative salaries." The Commission's objection to this sentence is found in the affidavit of Samuel Binder read in support of the contempt motion. After quoting the sentence the affidavit

continued "when the fact is that there is no ground for the belief or opinion that the operation of these companies was causing substantial losses to the Electric Bond and Share Company." The court found as a fact that the operation of the companies mentioned "did not cause losses. Consequently the statement is false and misleading." Thus the findings treat as decisive of the contempt the question whether in fact there were operating losses, although the issue posed by Binder's affidavit was whether Okin was expressing an opinion for which there was "no ground." As to this the findings are silent, but the court's opinion states that upon the argument Okin admitted that the operation of the mentioned companies did not in fact cause substantial losses to Electric Bond and Share Company "in the sense that outgo exceeded income; that he really meant that the capital invested could be more profitably employed elsewhere." This admission shows that the opinion was groundless; in other words, the statement of it even as an opinion was false or misleading. Although the injunction does not explicitly forbid the expression of opinions, we are satisfied that a false or misleading opinion as to one of the specified topics is within its prohibitions. The duty of the defendant "was obedience not only to the letter, but to the spirit, of the order." Economist Furnace Co. v. Wrought-Iron Range Co., C.C.D.Ind., 86 F. 1010, 1011; John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 128 F.2d 981, 983, certiorari denied 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446. The subject matter of the opinion under discussion was covered by the sixth specific topic[4] of paragraph (b) of the injunction as well as by the omnibus fourteenth.

■ The appellant argues that the very same sentence, omitting the words "in my opinion," had appeared in the November letter and that no objection to it was made by the Commission in the argument of its motion for the preliminary injunction. He says also that the three words added to the sentence in the January letter were inserted at the suggestion of the Commission's staff. But these facts furnish no excuse for a false or misleading statement forbidden by the injunction. The appellant was explicitly warned by the Commission not to mail the January letter, so he cannot successfully argue that his

---

4 "(6) The status of Electric Bond and Share Company by reason of its management and operation of subsidiaries."

violation was induced by the plaintiff. Accordingly the finding of contempt in respect to the item above discussed is sustained.

■ The other statement in the January letter found to be false and misleading is based upon a quotation from an order of the Commission.[5] It was changed by Okin only by placing in capital letters the words "distribution of assets to the preferred stockholders." The court made a finding that the quotation from the Commission's order "is taken out of context and gives the impression that the Commission is awaiting plans for the formulation of an exchange plan or plans for the distribution of all of the assets to the preferred stockholders. The Commission has never taken any such position. The statement is, therefore, false and misleading." A majority of the court can see in Okin's letter no implication that all the assets of the company were to be distributed to the preferred shareholders. The reference was to retention of jurisdiction as to $3,000,000 "pending the formulation of an exchange plan or plans for distribution of assets," not all assets, "to the preferred stockholders." Okin was protesting against a mode of distribution detrimental to the common stockholders. If there be in his quotation any implication that nothing might be left for the common stock, it is as vague and no broader than the implication of the order itself. Moreover, the very same quotation was made in the Company's report to its stockholders dated November 17, 1942, and had been given widespread publicity in financial publications. We think the holding that the injunction was violated by Okin's quotation from the Commission's order was not justified.

■ The order adjudging the appellant in contempt imposed a fine of $4,918.63 to be paid by him to The Legal Intelligencer, of Philadelphia, to defray the expense of printing and mailing, postage prepaid, a copy of the order and an explanatory statement of Counsel to the Commission to all stockholders to whom the appellant had mailed his January letter. The order further permitted him to apply to the court for remission of so much of the fine as should exceed the expense of the required printing and mailing. The amount of the fine was based on a bid obtained by the Commission from The Legal Intelligencer for printing and mailing 100,000 copies of the material to be sent in correction of Okin's January letter, although Okin filed an affidavit that his letter had been mailed to less than 6,000 stockholders. He objects strenuously to being required to pay a printer the cost of 100,000 copies and having to recover, perhaps by suit, the excess of the fine above the cost of mailing some 6,000 copies. We think the objection is well taken. He should be allowed to purge himself of the contempt by filing with the district court a list of the stockholders to whom the January letter was sent, and by mailing to them a correction, in a form to be approved by the court, of his misleading statement as to substantial losses being caused Electric Bond and Share Company by its operation of the mentioned subsidiaries. On failure so to purge himself within 20 days he should be required to deposit with the court $5,000 as security for the cost of correction to be made by the Commission.

The cause is remanded with directions to modify the order in conformity with this opinion.

CLARK, Circuit Judge (dissenting in part).

I concur with the district court in the view that the second statement upon which the contempt order was based was also false and misleading. As the court well said, it is "clearly misleading in its new setting"; read in the context of the Commission's opinion, "in an atmosphere of lawyers' idioms it conveys one meaning," while "in its new context, in its headlined form, it is very likely to convey" another meaning. "Defendant is a lawyer and alive to the different connotation of the clause against its new background. That is why he selected that quotation." Indeed, the superficial cleverness of thus using the Commission's own language to convey a meaning it did not intend seems to me, if anything, more objectionable than a forthright misstatement.

5 The statement reads as follows: "On February 20th, 1942, the Securities and Exchange Commission made an order wherein it permitted the Electric Bond and Share Company to only use $2,000,-000 of the said $5,000,000 towards the purchase of its preferred stock and retained jurisdiction as to the remaining $3,000,000 'pending the formulation by the company of an exchange plan or plans for *distribution of assets to the preferred stockholders.*'"