The CITY OF TYLER, Texas, Appellant,

v.

TELEVISION CABLE SERVICE, INC.,
Appellee.

No. 619.

Court of Civil Appeals of Texas,
Tyler.

May 11, 1972.

Jack Skeen, Jr., City Atty., Tyler, Dumas, Huguenin, Boothman & Morrow, Elbert M. Morrow, Saner, Jack, Sallinger & Nichols, H. Louis Nichols, Dallas, for appellant.

Ramey, Brelsford, Flock, Devereux & Hutchins, Donald Carroll, Tyler, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from an order granting a temporary injunction whereby the appellant, City of Tyler, Texas, was restrained from interfering with appellee's, Television Cable Service, Inc.'s, promulgation, charging and collection of rates and charges for services rendered to its subscribers. Such temporary injunction was conditioned upon the filing by Television Cable Service, Inc. of a refunding bond for the protection of both the subscribers of Television Cable Service, Inc. and the City of Tyler, Texas, in the amount of $100,000.00.

At the outset we point out that the order of the trial court before us for review does not nor attempts to establish whether the rate set by the City of Tyler, Texas, (hereinafter called City) for Television Cable Service, Inc. (hereinafter called Television Cable) to charge its subscribers was or was not a fair and reasonable rate or a confiscatory one. This is to be determined later by the trial court upon a trial of this case on its merits.

The purpose of the issuance of a temporary injunction is to preserve the status quo in regard to the matter in controversy or prevent irreparable injury or damage to applicant, pending final determination of the case on its merits. Labbe v. Carr, 369 S.W.2d 952, 954 (Tex.Civ.App., San Antonio, 1963, writ ref., n. r. e.). Ordinarily, the hearing upon an application for a temporary injunction neither substitutes for nor serves the same purpose as the hearing on the merits. Labbe v. Carr, supra; Southwest Weather Research, Inc. v. Jones, 160 Tex. 104, 327 S.W.2d 417, 421–422 (1959); Briscoe Ranches, Inc. v. Eagle Pass Independent School District, 439 S.W.2d 118, 120 (Tex.Civ.App., San Antonio, 1969, writ ref., n. r. e.).

Television Cable owns and operates a cable television system within the City of Tyler. Television Cable, in 1968, became the owner by purchase of the then existing cable television system in Tyler, which had been in operation by virtue of a permit granted by the City of Tyler in December, 1951. In December of 1968, Television Cable first filed its request for a rate increase and asked that said request be placed on the agenda of the City Commission for a hearing. At the request of the City Commission of Tyler, the request by Television Cable was temporarily removed from the agenda. Thereafter and during the years 1969 and 1970, Television Cable and City engaged in negotiations culminating in the enactment of an ordinance on October 2, 1970, granting Television Cable a twenty-year permit. During the period of negotiations resulting in the October 1970 ordinance, it was agreed by the parties that new rates were in order but that

new rates would not be put into effect until proposed new programing and services were available to subscribers. Television Cable's installation of new equipment for improved television service was completed during the summer of 1971 and new programing and services were made available to its subscribers.

In October of 1971, Television Cable made application to the City Commission of Tyler for a rate increase of $1.45 per month thereby raising such rate to $5.95 and requested a place on the agenda for October 19, 1971. On October 19, 1971, Television Cable appeared before the City Commission of Tyler and produced expert testimony in support of the requested rate increase, resulting in the passage of a resolution by the City Commission authorizing the immediate implementation of the rate schedule requested by Television Cable.

On Thursday, October 21, Television Cable was served with notice that the City Commission would, on October 26, 1971, meet for the purpose of reconsidering the action taken by the City Commission on October 19, 1971. On October 26, 1971, Television Cable again appeared and again produced evidence in support of its requested rate increase. The City Commission then by unanimous vote rescinded its resolution of October 19, 1971. Following said vote, the City Manager was ordered to prepare and submit to the City Council a form of ordinance prescribing the rates to be charged by Television Cable to its subscribers within the corporate limits of the City of Tyler, Texas. The said ordinance was brought before the City Commission

on November 5, 1971, at which time Television Cable again presented evidence in support of the requested rate increase. On November 5, 1971, the City Commission of the City of Tyler, Texas, enacted an ordinance which purported to determine a schedule of rates and charges which were "fair and reasonable" ($4.75 per month), which were lower than those requested by Television Cable. This was a rate increase of twenty-five (25) cents per month per subscriber. On the same day, Television Cable filed this action seeking injunctive relief in which, among other things, alleged the rate set by the City was confiscatory. Prior to the filing of Television Cable's application to the City of Tyler in October, 1971, for a rate increase, Television Cable was charging its subscribers a monthly rate of $4.50 for the use of its services, which rate had been in effect since December, 1961.

By the terms of the City Charter and the ordinance passed on first reading, November 5, 1971, the new rate would not go into effect until: (1) the ordinance of November 5th was passed on three readings, each reading to be at a regular meeting of the City Council,[1] and (2) "the said Television Cable Service, Inc. certifies to the City Commission * * * that the new RE-BUILD of the cable television system is complete, functions properly, and the services of cable television system are satisfactorily and readily available to all residents, subscribers, and areas of the City of Tyler, Texas, as prescribed under Section 17(b)[2] of the ordinance granting the permit and the City Commission * * * has approved the said certification * * *."

---

1. Section 7 of the City Charter of Tyler, Texas, reads in part: " * * * It shall elect its own Chairman and Vice Chairman and shall meet regularly on the first Friday of each month * * * "
   Section 38 of the City Charter of Tyler, Texas, reads in part: "The City of Tyler shall have the power to grant any franchise or right mentioned in the preceding sections hereof by ordinance, which ordinance shall not be passed finally

until its third and final reading, which readings shall be at three separate regular meetings of the governing body, * * * "

2. Section 17(b): "The service furnished by the Grantee shall be furnished to every person within the City of Tyler within reasonable time after demand for such service has been made, upon equal and exact terms for the same class of service * * * "

Upon the hearing before the trial court, Television Cable offered testimony supporting its contention that the $4.75 monthly rates set by the City were unjust, unreasonable, and confiscatory. The City failed to rebut this evidence. The City raises not a single point before this court in defense of the rates and charges contended for by it, but predicates its appeal upon procedural points and points which it apparently intends to urge on the trial of this case on its merits.

City, by way of appeal, brings eleven points complaining of the action of the trial court in granting the temporary injunction. By these eleven points, the City basically contends in general that the trial court erred in granting the temporary injunction in that it did not have jurisdiction. The City contends that before the trial court may properly act, in a case such as this, the party seeking injunctive relief must first exhaust the legislative processes and its administrative remedy, if such remedy exists. That the judicial system is open when and only when (1) the legislative functions have been completed or no timely action taken, and (2) legislative action is improper. Television Cable contends that where a rate-fixing ordinance is attacked because the rates set are confiscatory, a court may exercise its equity powers to enjoin the enforcement of the rate which is allegedly confiscatory.

The thrust therefore of City's argument is this: That because rate making is a legislative function, a party, situated as is Television Cable, must first exhaust the legislative process if such process is timely, before it may seek judicial relief, and where the City Charter provides the legislative process for timely action, as the City contends its charter so provides, Television Cable has no other remedy except to apply for and await the legislative process before seeking judicial relief. We think generally this is true, because ordinarily a party situated as is Television Cable has not actually suffered any injury until the legislative and/or administrative processes have been completed and put into effect.

It should be noted here, however, that the rate being charged by Television Cable when it filed this action was less than that granted by the November 5, 1971 ordinance, which Television Cable herein contends is confiscatory. It is also noted that by the very terms of the City Charter and the requirements of the ordinance of November 5, a minimum of at least two more months would be required before the legislative processes would have been completed, and according to the contention of the City, before Television Cable could seek judicial relief from allegedly confiscatory rates.

■ We agree with the reasoning of the U. S. Supreme Court in Smith v. Illinois Bell Telephone Company, 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 and believe it is definitive of the issues here. The Supreme Court in *Smith* reasoned:

"* * * Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them; and where, in that respect, such a state of facts is disclosed as we have here, the injured public service company is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief. * * *"

The same general theme is stated by the Houston Court of Civil Appeals in City of Houston v. Memorial Bend Utility Company, 331 S.W.2d 418 (Tex.Civ.App., Houston, 1960, ref., n. r. e.), wherein it said:

"* * * Of course, even should the City Council not expressly deny a hearing but should delay or prolong the hearing so its action would be tantamount to a denial of a hearing, the courts could intervene upon proper proceedings being instituted. * * *"

Again we point to the language of the Supreme Court of the United States in

Prendergast v. New York Tel. Co., 262 U. S. 43, 43 S.Ct. 466, 67 L.Ed. 853, wherein it states:

"Nor did the fact that the orders of the Commission merely prescribed temporary rates to be effective until its final determination, deprive the Company of its right to relief at the hands of the court. The orders required the new reduced rates to be put into effect on a given date. *They were final legislative acts as to the period during which they should remain in effect pending the final determination; and if the rates prescribed were confiscatory the Company would be deprived of a reasonable return upon its property during such period, without remedy, unless their enforcement should be enjoined. Upon a showing that such reduced rates were confiscatory the Company was entitled to have their enforcement enjoined pending the continuance and completion of the rate-making process."* (Emphasis ours.)

Applying the City's contention that Television Cable must first exhaust both the legislative processes and administrative remedies in light of the aforementioned

cases, the trial court under the facts here could not have acted until the following was made to appear:

(1) until the November 5, 1971 ordinance was passed on a second and third reading which as noted before would take a minimum of two months;

(2) until a motion for rehearing had been filed and acted upon after final passage of November 5 ordinance;[3]

(3) until Television Cable certifies to the City Commission that the REBUILD of the cable television system is complete, functions properly, and the services of the cable television system are satisfactorily and readily available to all residents, subscribers and areas of the City of Tyler, Texas,[4] and

(4) until the certification above set out in (3) has been approved by the City Commission.

Television Cable by its petition alleged that the rates promulgated by the Nov. 5 ordinance were confiscatory and amounted to a taking of property. It should again be

3. Section 44 of the City Charter of Tyler reads: "No person or corporation enjoying any franchise to operate a public utility within the City of Tyler shall ever make a charge or fix any rate for public service to its patrons or the inhabitants of the City of Tyler without first being authorized by the Commission of the City by an ordinance or order approving the same, and no public utility shall contest any rate or charge or order fixed by the Commission of the City under the authority otherwise conferred in the Charter of the City in any suit or cause of action in any Court until after such utility has filed a motion for rehearing with the Commission of the City specifically setting out the grounds of complaint against any such order or ordinance fixing any rate or charge and until the Commission of the City shall have passed upon the said motion for rehearing."

4. Section 3 of the November 5 ordinance reads: "No rate or charge set forth in the schedule of rates and charges in the amendment to Section 33(f) in Section

1 above shall be implemented or charged to subscribers, nor is any rate or charge set forth in the schedule of rates and charges above authorized by this ordinance to be implemented or charged to subscribers by the said Television Cable Service, Inc. until and not before, the said Television Cable Service, Inc. certifies to the City Commission of the City of Tyler, Texas, that the new REBUILD of the cable television system is complete, functions properly, and the services of the cable television system are satisfactorily and readily available to all residents, subscribers, and areas of the City of Tyler, Texas, as prescribed under Section 17(b) of the ordinance granting the permit and the City Commission of the City of Tyler, Texas, has approved the said certification of the cable television system REBUILD as true and correct. The said rates and charges shall be effective from the 1st. day of the month in which the said certification is approved and accepted by the City Commission of the City of Tyler, Texas."

noted that the rate passed by the first reading on November 5, 1971, even though it provided for an increase in the rate previously charged, was one dollar and twenty cents ($1.20) less than the rate originally requested on October 19th by Television Cable and which rate was alleged to be non-confiscatory.

■ In order for Television Cable to show itself entitled to a temporary injunction in a case such as this, three factors must be shown by satisfactory proof: (1) that there is a reasonable probability that Television Cable will succeed on final hearing, (2) that the loss to the utility resulting from a refusal to grant the temporary injunction will be irreparable, and (3) that the customers can be adequately protected by bond. General Telephone Company v. City of Wellington, 156 Tex. 238, 294 S.W.2d 385 (1956).

■■ The trial court found in its judgment that (1) there is a reasonable probability that the plaintiff will prevail on final hearing, (2) the losses which will be sustained by Television Cable if the temporary injunction sought is not granted will be irreparable, and (3) the City of Tyler as well as the subscribers of Television Cable can be adequately protected by the filing of a bond which would preserve the status quo.

In cases involving the granting or denying of a temporary injunction, the sole question before the appellate court is whether the trial court abused its discretion. Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460 (1952); City of Baytown v. General Tel. Co. of Southwest, 256 S.W.2d 187 (Tex.Civ.App., Galveston, 1953, n. r. e.). The rule of law in Texas is that the trial court is clothed with broad discretion in determining whether to issue or whether not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case. When that discretion is exercised, its order should not be overturned unless the record

discloses a clear abuse of discretion. Texas Foundries v. International Moulders & Foundry Workers' Union, supra; Briscoe Ranches, Inc. v. Eagle Pass Independent School District, supra; Long v. Castaneda, 475 S.W.2d 578, 581 (Tex.Civ.App., Corpus Christi, 1972, n. w. h.).

The scope of our review has been within the guide lines set out in City of Houston v. Southwestern Bell Tel. Co., 263 S.W.2d 169 (Tex.Civ.App., Galveston, 1953, error refused), wherein that Court stated:

"Our review of this case on this appeal from the temporary injunction granted by the trial court does not extend to or include in its purpose the making of independent findings by this Court upon the three elements necessary to the issuance of such injunction as set forth in City of Baytown v. General Telephone Company of the Southwest, supra. That is exclusively the function of the trial court. Our review is limited to the determination of whether there is some evidence of a substantial and probative character to support the findings of the trial court. If such evidence is in the record, the findings of the trial court control. Only where no such evidence exists can this or any other appellate court hold that the trial court abused its discretion."

■ The sole question to be determined in the case at bar is whether the trial court abused its discretion in granting the temporary injunction. State of Texas v. Thomas, 473 S.W.2d 639 (Tex.Civ.App., Tyler, 1971, writ ref., n. r. e.); City of Farmersville v. Texas-Louisiana Power Co., 33 S.W.2d 272 (Tex.Civ.App., Dallas, 1930). In considering this matter, we must view all the evidence in a light most favorable to the trial court's judgment. District Trustees of Dist. No. 46 and Freestone County v. County Trustees of Freestone County, 197 S.W.2d 579 (Tex.Civ.App., Waco, 1946, n. w. h.).

Upon an examination of the facts of our case and applying thereto the above princi-

ples of law, we cannot say that there was a clear abuse of discretion by the trial judge in granting the temporary injunction.

 The evidence in the instant case, which is mostly uncontroverted and not complained of directly here on appeal, under the test set out in City of Houston, supra, supports the findings made by the trial court in its order granting the temporary injunction. As to the first requirement that there be shown a reasonable probability that Television Cable will succeed on final hearing, the evidence, we think, is sufficient to support such finding by the trial court. As to the second requirement of showing irreparable injury, as has been noted before, the difference between the rates alleged to be confiscatory and non-confiscatory is sufficient to amount to irreparable injury. The record reflects that this loss would amount to a sum of between fifteen thousand dollars ($15,000.00) and twenty thousand dollars ($20,000.00) per month in revenues to Television Cable. The third requirement has been met by the one hundred thousand dollar ($100,000.00) bond required to be executed and filed by Television Cable in favor of its subscribers in the event it does not succed in final hearing.

We again point to the language of the Court in City of Baytown, supra, "This case was, we think, a clear case for a temporary injunction and the trial court did not err, we think, in granting such relief to appellee. The injunctive relief granted was the only possible way by which appellee could be protected from immediate irreparable injury. A denial of the injunction would have meant a continued taking of appellee's property without just compensation until the matter had been final adjudicated and the consequent loss in revenues would have been impossible to recoup even though appellee's position was vindicated on final hearing." This statement likewise applies to the case at bar.

 City also contends by way of alleged error that the action of the trial court in issuing the temporary injunction was erroneous in that it did not maintain the true status quo between the parties. We cannot agree. The true status quo that equity seeks to maintain by injunctive relief is one where neither party is subject to damage. City of Baytown v. General Telephone Company of Southwest, supra; City of Carrollton v. Southwestern States Telephone Company, 381 S.W.2d 401, 405 (Tex.Civ.App., Eastland, 1964, writ ref., n. r. e.). Here, the true status quo is fair and reasonable rates to both parites. In the case at bar, without injunctive relief from alleged confiscatory rates, Television Cable stands to lose thousands of dollars in revenue, which, without such relief, it could not recoup such loss even though it should prevail on final hearing.

The issuance and terms of the injunction affords full protection to both parties, and we believe this to be the true status quo.

We have reviewed all points of error and have come to the conclusion that the trial court has not been guilty of a clear abuse of discretion by the balancing of the equities in this case.

Therefore, the judgment of the trial court is affirmed.