(July 12, 1977)

■ Winthrop Gardens, Inc., Appellant, v Lee Goodwin, as Commissioner of Housing and Community Renewal of the State of New York, Respondent.—Judgment, Supreme Court, New York County, entered December 2, 1976, dismissing the petition, affirmed, without costs and without disbursements. Lee Goodwin, as Commissioner of Housing and Community Renewal of the State of New York, after hearings held, granted a rental increase to Winthrop Gardens, Inc. Winthrop, as a limited-profit housing corporation, must apply for any rental increase and must document the need therefor (Private Housing Finance Law, § 31). In the case at bar, after Winthrop made application for an increase, extensive hearings were held and all parties concerned were afforded an opportunity to present relevant evidence. The commissioner, after reviewing the evidence, granted a $6-per-room rental which, according to her projections, would cover any increased running expenses for the next four years and pay current dividends. Winthrop instituted this article 78 proceeding, claiming that the increases granted were insufficient. It is urged that investors in limited-profit housing corporations are entitled to a 6% return on their investment (Private Housing Finance Law, § 28), and that such return has not materialized for several years. The rent increase granted by the commissioner took into account projection of costs over the next four years and properly balanced the needs of the tenants for rentals within their means and that of the investors for a return on their investment (Private Housing Finance Law, §§ 11, 11-a). The Private Housing Finance Law contemplates just such a situation which has here occurred (viz., arrearage in the payment of dividends) and provides that such arrearages accumulate (Private Housing Finance Law, § 28, subd 1), ultimately to be paid by granting of future

increases. In view of the fact that the increase granted allows for payment of current dividends due and current and projected running expenses, we conclude that the commissioner's determination had a substantial basis therefor and should be affirmed. We further find no need for a hearing to explore the alleged undue influence used by a State Senator with the commissioner to obtain a ruling favorable to the tenants. In the record before us, the commissioner has presented the documentary bases for her determination and has specifically denied that any other ingredients were considered in reaching a final determination. The newspaper article pointed to by Winthrop, standing alone, is insufficient to warrant a remand for further hearings. Concur—Evans, Lane and Markewich, JJ.; Silverman, J., dissents in the following memorandum: Petitioner, a limited-profit housing company organized under article 2 of the Private Housing Finance Law, brought this article 78 proceeding against the State Commissioner of Housing and Community Renewal. Petitioner constructed, owns, and operates a rental apartment development consisting of 340 apartments located in three buildings in the Borough of Bronx, New York City. On July 31, 1975, respondent commissioner fixed the rents in said apartment development effective September 1, 1975, at a figure of $46.09 per room per month, an increase of 15% over previous rentals. The figure so fixed is calculated to be sufficient to pay the expenses, plus 6% dividends on petitioner's common stock. However, for the four years since °July 1, 1970, petitioner had been unable to pay dividends on its preferred or common stock. As a result, the arrears of dividends amounted to $240,030, or slightly under one third of the stockholders' investment of $762,000. Petitioner requests that the commissioner be directed to fix the rents at a figure which would make up the arrears over a three- or four-year period and that the increase either be made retroactive to January 1, 1975 (that being three months after petitioner's application), or that the rents be further increased to make up for such lack of retroactivity. Special Term dismissed petitioner's application on the ground that the commissioner's determination had a rational basis and was not arbitrary or capricious, and that petitioner had failed to support its contention that commissioner's determination was politically influenced by elected public officials. From this judgment of Special Term, petitioner appeals to this court. I think the stockholders of limited-profit housing companies organized under article 2 of the Private Housing Finance Law are entitled to a 6% return on their stock, and where, as here, they have received no return for some years, the rentals should, if at all practical, be fixed at a figure which makes some effort toward making up the arrears. Whenever rates are government regulated, they must be fixed at a figure that provides a reasonable return on the investment. We see this not only in the area of public utilities but in the much more analogous situation of rent control in this city. The requirement of a fair return is even more appropriate where, as here, investors have agreed to forego any right to receive a return of more than 6% on the stock. (Private Housing Finance Law, §§ 28, 35, subd 3; § 36, subd 2.) The fair interpretation of the statutes is a statutory determination that 6% constitutes the fair return to which stockholders are entitled. Thus subdivision 1 of section 28 of the Private Housing Finance Law provides that: "1. There shall be paid annually out of the earnings of the company, after providing for all taxes [etc.] a dividend of six per centum on outstanding stock * * * the obligation in respect of such payments shall be cumulative, and any deficiency in interest, amortization, depreciation, reserves, if any, and dividends in any year shall be paid either from any cash surplus derived from earnings remained in the treasury of the com-

pany in excess of the amount necessary to provide such cumulative annual sums or from the first available earnings in subsequent years." (See, also, § 31.) Of course no one can guarantee that in any particular year the earnings will be sufficient to make these payments and thus the possibility of arrears exists. But the quoted provision of the statute obviously contemplates that these arrears should be made up from future years' earnings. In the present case, no dividends were paid for four years. And the rentals here under review were fixed without any provision for taking any step toward making up the deficiency even through the next four years. In these circumstances, the commissioner's assertion that "the stockholders will be paid eventually" is not very meaningful. As the United States Supreme Court said in *Smith v Illinois Bell Tel. Co.* (270 US 587, 591): "Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them". Perhaps petitioner is asking that the arrears be made up too fast in the light of the hardship to the tenants and the practicality of the situation. But there should be some factual showing of why it is not possible or practical to begin to take some small steps toward making up the arrears. More serious, in my view, is petitioner's suggestion that the commissioner's determination is politically motivated and influenced. Hearings were held before a hearing officer on eight dates and 1,293 pages of testimony were taken. The petitioner quotes a published letter from a tenants' council indicating that after these hearings, the commissioner met ex parte with a group of tenants and a State Senator who was representing them and engaged in several hours of negotiations which resulted in a reduction of an increase upon which the commissioner had tentatively decided. It may be that these reports are wholly without factual foundation. There is no way for petitioner to know this. But the commissioner knows. And the commissioner's response to this point is hardly persuasive; it is conclusory and almost evasive. She does not say whether she did or did not have the meeting or what happened at the meeting. Instead she merely says: "Allegations of influence extended by an elected public official representing the tenants have not been substantiated. In the course of my duties I have occasion to speak to many elected public officials about various phases of having *[sic]* problems in this state. However, my frequent decisions concerning the financial viability of housing companies under my supervision are always based upon financial reports and analyses by my Finance and Audit and Management Bureaus." We are concerned here with a proceeding which is not supposed to be political. We are concerned with a quasi-judicial matter, the fixing by a State official of rents in accordance with standards described by the Legislature. In such a matter, it is essential that the commissioner shall decide the case on the merits, and shall appear to do so on the merits, and should not hold ex parte secret discussions with one side after the taking of testimony on the record. Such meetings are inconsistent "with the ideal of reasoned decision making on the merits which undergirds all of our administrative law." *(Home Box Off. v Federal Communications Comm.,* DC. Cir, March 25, 1977.) In the *Home Box Off.* case the court criticized the action of the Federal Communications Commission in having informal ex parte contacts after a hearing on the record in a rule-making proceeding. The court said, among other things: "If actual positions were not revealed in public comments, as this statement would suggest, and, further, if the Commission relied on these apparently more candid private discussions in framing the final pay cable rules, then the elaborate public discussion in these dockets has been reduced to a sham. Even the possibility that there is here one

administrative record for the public and this court and another for the Commission and those 'in the know' is intolerable. Whatever the law may have been in the past, there can now be no 'doubt that implicit in the decision to treat the promulgation of rules as a 'final' event in an ongoing process of administration is an assumption that an act of reasoned judgment has occurred, an assumption which further contemplates the existence of a body of material—documents, comments, transcripts, and statements in various forms declaring agency expertise or policy—with reference to which such judgment was exercised. Against this material, 'the full administrative record that was before [an agency official] at the time he made his decision,' *Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* 401 U.S. at 420, it is the obligation of this court to test the actions of the Commission for arbitrariness or inconsistency with delegated authority. *See id.* at 415-416; pages 48-52 *supra.* Yet here agency secrecy stands between us and fulfillment of our obligation. As a practical matter, *Overton Park's* mandate means that the public record must reflect what representations were made to an agency so that relevant information supporting or refuting those representations may be brought to the attention of the reviewing courts by persons participating in agency proceedings. This course is obviously foreclosed if communications are made to the agency in secret and the agency itself does not disclose the information presented. Moreover, where, as here, an agency justifies its actions by reference only to information in the public file while failing to disclose the substance of other relevant information that has been presented to it, a reviewing court cannot presume that the agency has acted properly, *Citizens to Preserve Overton Park, Inc. v. Volpe, supra,* 401 U.S. at 415, 419-420; *see* K. DAVIS, ADMINISTRATIVE LAW OF THE SEVENTIES § 11.00 at 317 (1976), but must treat the agency's justifications as a fictional account of the actual decisionmaking process and must perforce find its actions arbitrary". It is true that Federal administrative proceedings are governed by the Administrative Procedure Act (US Code, tit 5, § 551 *et seq.),* and there is no similar State statute. But the principle appears to me to be fundamental, at least as it relates to proceedings which are wholly adjudicatory of private rights rather than quasi-legislative (cf. *United States v Florida East Coast Ry. Co.,* 410 US 224, 245, and see dissenting opn, p 251) and thus in which there is no room for political considerations. The present case involves a "resolution of conflicting private claims," and "basic fairness requires such a proceeding to be carried on in the open" *(Sangamon Val. Tel. Corp. v United States,* 269 F2d 221, 224). In *Kingsbridge Housing Corp. v Starr* (Supreme Ct, NY County, No. 05985/74), Mr. Justice Frank criticized and reversed a determination of the Administrator of the City Housing and Development Administration in connection with a rent increase applied for by a limited-profit housing company where, after the public hearings, the administrator had held an ex parte conference with legislators who had appeared at the hearings on behalf of the tenants. It may be that petitioner's fears of ex parte meetings and political influence are without foundation. But the commissioner's bland, uninformative response does nothing to allay those fears. The remedy applied in the Federal cases appears to have been to remand the case to the commission with instructions " 'to hold, with the aid of a specially appointed hearing examiner, an evidential hearing to determine the nature and source of all *ex parte* pleas and other approaches that were made to' the Commission or its employees after the issuance of the first notice of proposed rulemaking in these dockets." *(Home Box Off. v Federal Communications Comm., supra);* accord *Sangamon Val. Tel. Corp. v United States, supra; Citizens To*

*Preserve Overton Park v Volpe,* 401 US 402, 420 [where the case was remanded to the District Ct for such an inquiry].) In accordance with the procedure in the *Overton Park* case *(supra),* I would reverse the judgment appealed from and would remand this matter to the Supreme Court for an evidentiary hearing as to what meetings the commissioner had and what information was submitted to her ex parte that is not in the record before us and what happened at those meetings, and for a determination, in the light of that, whether the commissioner's determination "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion". (CPLR 7803, subd 3.)

