**SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiff,**

v.

**ARKANSAS PUBLIC SERVICE COMMISSION, et al., Defendants.**

No. LR C 84 247.

United States District Court,
E.D. Arkansas, W.D.

March 30, 1984.

---

D.D. Dupre and Gary Hartman, and Hermann Ivester, Prince & Ivester, Little Rock, Ark., for plaintiff.

Robert L. Waldrum, Don Elrod, Art Stuenkel, Little Rock, Ark., for defendants.

ORDER

OVERTON, District Judge.

The plaintiff sued for declaratory judgment and preliminary and permanent injunctive relief for the defendants' failure to comply with orders of the Federal Communications Commission (FCC) and with 47 C.F.R. § 67.1 and the Separations Manual adopted by the FCC. The parties have submitted extensive briefs, stipulations and affidavits concerning all issues necessary for disposition of the case. Although no party has moved for summary judgment, the issues will be dispositive and judgment shall be entered in accordance with this order unless the parties raise new issues within ten days of this order.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and 47 U.S.C. § 401(b). Venue is proper in this district pursuant to 28 U.S.C. § 1391.

The ultimate issues of this case require initial resolution of the jurisdiction of the FCC. It must be noted that the FCC is not a party to this lawsuit, although joinder would have been proper since the plaintiff seeks to enforce orders and rules of the FCC. *See* 47 U.S.C. §§ 401, 402 and 411.

The defendants issued an order in a rate request by the plaintiff January 23, 1984, *In the Matter of Southwestern Bell Telephone Company for an Order Establishing and Implementing New Intrastate Rates, Tolls and Charges Applicable to Intrastate Telecommunications Services Furnished Within the State of Arkansas,* Arkansas Public Service Commission Doc. No. 83–045–U, Order No. 29. Although the plaintiff is scheduled for rehearing by the defendants and has not exhausted its state law appeals, it sued in federal court, alleging two counts: (1) that the defendants violated a valid preemption order of the FCC requiring them to determine intrastate telephone rates by using accelerated depreciation methods used by the FCC for interstate ratemaking purposes; and (2) that the defendants violated FCC-ordered allocation procedures for separating interstate and intrastate costs.

The defendants admit that the FCC has ordered them to use the accelerated depreciation methods, but insist that the FCC lacked jurisdiction to issue the order. They insist also that they are following the cost separations procedures of the FCC.

### I. FCC Jurisdiction

*Count I.*—The Federal Communications Commission was established by the Communications Act of 1934, 47 U.S.C. § 151 *et seq.,* to regulate interstate and foreign communication. Congress expressly limited its jurisdiction, excluding regulation of intrastate communication. 47 U.S.C. § 152(b)(1). The FCC is authorized to determine depreciation rates for interstate carriers under 47 U.S.C. § 220(b). The FCC is authorized to exempt carriers such as the plaintiff from any of its accounting requirements where they are concurrently regulated by state regulatory commissions. 47 U.S.C. § 220(h). Within a nine month period, the FCC interpreted § 220(b) to deny its jurisdiction over establishing depreciation rates for intrastate ratemaking, and then to grant such jurisdiction. *Compare Amendment of Part 31,* 89 F.C.C.2d 1094 (1982) *with Amendment of Part 31,* 92 F.C.C.2d 864 (1983) ("Preemption Order").

■ The Court has reviewed the FCC's analysis of the legislative history and is unpersuaded that the FCC has jurisdiction to determine intrastate depreciation methods. Although § 220(b) is not *expressly* limited to interstate depreciation methods, this must be implied. The 1934 act left the door open for the FCC to ask Congress for additional authority under 47 U.S.C. § 220(j). In light of the express FCC jurisdictional *limitations* imposed by Congress, the FCC's interpretation of expanding jurisdiction is a non sequitur. The logic of expanding into intrastate jurisdictional matters in the name of "rapid, efficient, Nation-wide, world-wide wire and radio communication service with adequate facilities at reasonable charges" could, theoretically, allow the FCC to bootstrap itself into preempting *all intrastate* ratemaking de-

terminations. 92 F.C.C.2d at 876 (citing 47 U.S.C. § 151). If the FCC wishes to have this authority, it should seek express congressional approval. The Court finds the FCC preemption of intrastate depreciation methods to be ultra vires and will not enforce it for the plaintiff.

■ Some mention has been made that only a court of appeals may invalidate an FCC order pursuant to 28 U.S.C. § 2342. However, 28 U.S.C. § 2342 is inapposite since this proceeding is not "any proceeding to enjoin, set aside, annul or suspend any order" of the FCC, making 47 U.S.C. § 402(a) applicable. Since the FCC is not a party, it will have no effect upon it. Further, determination of the issue is merely incidental to this lawsuit over which this Court has ample jurisdictional basis. If the FCC wishes to enforce its order, then it should take the appropriate steps.

■ *Count II.*—Unlike the depreciation issue of Count I, the FCC has full statutory authority, through the use of joint boards, for allocation of costs between interstate and intrastate jurisdictions where facilities are used for both purposes. 47 U.S.C. § 410.

## II. Substantive Issues

*Count I.*—Since this Court finds that the FCC Preemption Order, 92 F.C.C.2d 864 (1983), is unenforceable, Count I must be dismissed and judgment entered for the defendants.

*Count II.*—There is no dispute between the parties that the defendants must follow the separations procedures established by the FCC. There are three primary issues over compliance with those procedures: (1) whether the defendants improperly reallocated open end traffic sensitive costs and closed end non-traffic sensitive costs associated with foreign exchange/common control switching arrangement (FX/CCSA) services from intrastate to interstate jurisdiction; (2) whether the defendants improperly reallocated open end non-traffic sensitive costs of FX/CCSA services from intrastate to interstate jurisdiction; and (3) whether the defendants properly refused to use updated operator work time studies in computing intrastate rates.

Issue (1): The defendants' January 23, 1984, order resulted in a shift of cost allocation from intrastate to interstate jurisdiction. The defendants admit that their order was in technical violation of an FCC "Freeze Order", *Amendment of Part 67*, 89 F.C.C.2d 1 (1982), which froze the subscriber plant factor (SPF), a multiplication factor used for determining the proper allocation of costs from facilities used for both intrastate and interstate traffic. Since the defendants' order was issued, however, the FCC amended the factor to include these two modifications made by the defendants. The amendment to the Separations Manual shall become effective April 3, 1984. *In the Matter of Amendment of Part 67*, Order FCC 83–564 (adopted December 1, 1983, and released February 15, 1984). The issue remaining is whether a violation for ten weeks results in injury to the plaintiff. If so, then an appropriate remedy must be fashioned.

Issue (2): The determination of whether the defendants improperly reallocated open end non-traffic sensitive costs of FX/CCSA services to interstate costs depends upon whether the allocation was proper prior to the FCC Freeze Order, *Amendment of Part 67*, 89 F.C.C.2d 1 (1982). The defendants insist that the adjustments were in effect prior to the order. The parties stipulated that the adjustment to reallocate the costs to the interstate jurisdiction was made by the defendants in Order No. 12, APSC Doc. No. U–3117 (August 6, 1981). The same allocation was made in Order No. 11, APSC Doc. No. 82–037–U (November 29, 1982), and in the January 23, 1984, order. The 1981 allocation under APSC Doc. No. U–3117 is pending decision on appeal to state court. Even if this allocation was originally proper, the issue remains whether it is valid after the freeze order.

Issue (3): The plaintiff maintains that the updated operator work time figures (OWT) should have been accepted by the

defendants. The plaintiff frames the issue in terms of whether the defendants must accept updated figures or whether the OWT figures were frozen at the time in 1970 when the last Separations Manual was published. The defendants concede that they must accept updated OWT figures, and admit that they *have* accepted such updated figures in the past. The defendants frame the issue in terms of whether the plaintiff laid the proper evidentiary foundation for them to accept the numbers proposed by the plaintiff.

### III. Exhaustion of Administrative Remedies and Abstention Doctrines

■ All of the issues raised by Count II raise broader issues of exhaustion of administrative remedies and abstention. Both doctrines have forceful support in this case. A collateral attack in federal court should not be used to unnecessarily subvert established state and federal administrative procedures. Primary jurisdiction for interstate/intrastate cost allocation or "separations" issues lies with the FCC and joint boards appointed by the FCC.

■■ Exhaustion of administrative remedies is normally required before judicial relief is available. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 101 S.Ct. 488, 68 L.Ed.2d 416 (1980); *Darr v. Carter*, 640 F.2d 163 (8th Cir.1981). The balancing test for an exception to this requirement is discussed in *West v. Bergland*, 611 F.2d 710 (8th Cir.1979). If the "litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further," then no exhaustion of administrative remedies is required. *Id.* at 715 (citing *United States v. Newmann*, 478 F.2d 829, 831 (8th Cir. 1973)). The governmental interests include (1) allowing the agency to "perform functions within its special competence", including "specialized fact-finding", "interpretation of disputed technical subject matter," and "resolving disputes concerning the meaning of the agency's regulations"; (2) "discouraging 'frequent and deliberate flouting of the administrative process'"; (3) "allowing the agency to have the first opportunity to develop the facts and apply the law it was designed to administer"; and (4) "allowing agencies to correct their own errors, and in so doing moot controversies and obviate judicial review." *Id.* at 715, 716. This case presents compelling circumstances for requiring exhaustion of administrative remedies with the FCC and upon rehearing by the defendants. The factual complexities of interstate and intrastate ratemaking are best resolved by those with that area of expertise.

■ The individual's interest in the balancing test requires "exceptional circumstances", generally by establishing "irreparable injury" or "inadequate remedy". *Id.* at 718. Unreasonable delay by the administrative agency may establish irreparable injury, but there is no showing that such a delay is expected to occur here. *See Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926). In short, the plaintiff has not established that there are any exceptional circumstances why issues of *compliance* with the FCC ordered separations should not be first addressed to the FCC. The statutory scheme states that *"any"* proceeding regarding the jurisdictional cost separations may be referred to a joint board by the FCC. 47 U.S.C. § 410(c). This would appear to include compliance issues. Thus, when the government's interest is weighed with the plaintiff's interest, the scales tip dramatically in favor of the government and require exhaustion of administrative remedies. The plaintiff has cited and supplied copies of cases decided by the FCC which resolve such issues. Where the FCC has clear jurisdiction, as it does over Count II issues, it should be consulted before going to federal court.

■ Further, a persuasive argument for abstention on the Count II issues can be made. Evidentiary questions and policy issues, such as the amount and method of recovery of inadequately set rates, should not be resolved in a collateral attack in federal court, but rather through normal state appeal. The Arkansas legislature has

specifically addressed the policy issue of how utilities should recover when the rates set by the defendants are determined inadequate on appeal or rehearing. Ark.Stat. Ann. § 73–217 (Supp.1983). Abstention on these issues is justified as a matter of federal discretion and comity in state regulatory matters. *Alabama Comm'n. v. Southern R. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

### IV. Preliminary Injunction Relief

The requirements for a preliminary injunction in this case will be addressed briefly, although the discussion is unnecessary since Count I is dismissed for lack of FCC jurisdiction, and Count II is dismissed under the doctrines of exhaustion of administrative remedies and abstention. The parties have addressed two tests for injunctive relief: (1) statutory test under 47 U.S.C. § 401(b); and (2) common law test under *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981).

(1) 47 U.S.C. § 401(b) provides injunctive relief if an "injured" party applies to district court and shows that an FCC order was "regularly made", "duly served" and disobeyed. Since there was no jurisdiction for the FCC to require accelerated depreciation rates for intrastate purposes, the order could not have been "regularly made" as a matter of law for Count I. The parties stipulated that the preemption order was "regularly made", but the Court interprets this stipulation to mean the order was "regularly made" only in a procedural sense, since the defendants clearly have objected to the FCC's jurisdiction. The plaintiff would have to establish "disobedience" for preliminary injunctive relief under Count II. This is unnecessary in light of the judicial doctrines discussed.

The parties have discussed the injury requirement extensively. The plaintiff maintains that it has incurred real financial and competitive losses due to the defendants' action which cannot be recovered under the Arkansas statutory provision, Ark. Stat.Ann. § 73–217 (Supp.1983). The defendants insist that this statute allows full recovery and attack the claimed losses. These factual issues need not be resolved at this time, but it appears that the plaintiff is "injured" within the meaning of the statute.

(2) *Dataphase* Test. The traditional test for a preliminary injunction in this circuit requires evaluation of (a) the threat of irreparable harm to the plaintiff; (b) the balance of the plaintiff's harm with the injury to the other parties from the injunction; (c) the plaintiff's probability of success on the merits; and (d) the public interest. *Dataphase, supra*, 640 F.2d at 114. There is a *threat* of irreparable harm to the plaintiff, although disputed. No real injury to the defendants would occur. The plaintiff has no probability of success on Count I, and only limited probability of success on Count II. The public interest would weigh heavily on the side of the defendants, and not on the side of the plaintiff. The plaintiff would fail the *Dataphase* test.

### V. Conclusion

The Court concludes that Count I should be dismissed for lack of FCC jurisdiction in issuing the Preemption Order of January 6, 1983, 92 FCC 2d 864, which required state regulatory commissions to use FCC ordered accelerated depreciation methods for intrastate ratemaking purposes. Count II shall be dismissed under the judicial doctrines of exhaustion of administrative remedies and abstention.

Either party may raise additional issues or make submissions necessary to complete the record for appeal within ten days. If no additional pleadings are submitted within that period, summary judgment shall be entered for the defendants and the case dismissed.