

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-1995

# Bhatnagar v Surrendra

Precedential or Non-Precedential:

Docket 93-2059

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Bhatnagar v Surrendra" (1995). *1995 Decisions.* Paper 99.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/99

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 93-2059 and 93-2076

_____


URVASHI BHATNAGAR, an Infant by her Mother
and Natural Guardian, Kaplana Bhatnagar;
KAPLANA BHATNAGAR, Individually

vs.

SURRENDRA OVERSEAS LIMITED; APEEJAY LINES, in
personam; M.V. APJ KARAN, her engines,
boilers, tackle, etc. in rem

     SURRENDRA OVERSEAS LIMITED, Claimant to
     the Res; APEEJAY LINES, in personam and
     the M/V APJ KARAN, her engines, boilers,
     etc. in rem,

                  Appellants in No. 93-2059


URVASHI BHATNAGAR, an Infant by her Mother
and Natural Guardian, Kaplana Bhatnagar;
KAPLANA BHATNAGAR, Individually

vs.

SURRENDRA OVERSEAS LIMITED; APEEJAY LINES, in
personam; M.V. APJ KARAN, her engines,
boilers, tackle, etc. in rem

     Urvashi Bhatnagar, an infant by her
     Mother and Natural Guardian,
     Kalpana Bhatnagar, and Kalpana
     Bhatnagar, Individually,

                  Appellants in No. 93-2076


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 92-06321)

_____

ARGUED JULY 19, 1994

BEFORE:  SCIRICA, LEWIS and ROSENN, Circuit Judges.

(Filed  April 17, 1995)

_____

William G. Downey (ARGUED)
Michael D. Greenberg
Clark, Ladner, Fortenbaugh & Young
2005 Market Street
One Commerce Square, 22nd Floor
Philadelphia, PA  19103

          Attorneys for Surrendra Overseas, Apeejay
          Lines and M/V APJ Karan


Lenore E. McQuilling (ARGUED)
Harold Gordon
Kahn & Gordon, P.C.
30 Vesey Street, Suite 1400
New York, NY  10007

          Attorneys for Urvashi Bhatnagar and Kalpana
          Bhatnagar

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

          This case principally involves an issue of first

impression for this court:  can extreme delay in an alternative

forum render that forum inadequate for purposes of assessing a forum non conveniens motion?  We answer that question in the affirmative, and then address a number of issues arising from the trial of this matter.

This case comes to us after final judgment in rem in favor of plaintiff Urvashi Bhatnagar, a young female Indian national, against Surrendra Overseas Ltd. ("Surrendra"), an Indian shipping company, Apeejay Lines, an unincorporated division of Surrendra,[1] and the M/V APJ KARAN, an Indian vessel, for injuries that Urvashi sustained aboard the APJ KARAN on the high seas.  In 1991, while six-year old Urvashi was playing a "game" with one of the ship's crew on the bridge of the APJ KARAN, her right hand and arm were severely lacerated when they came in contact with a device used to repel water from the windows of the bridge.

Urvashi and her mother, Kalpana, sued Surrendra in federal court in New York under the court's admiralty jurisdiction, then transferred the action to the Eastern District of Pennsylvania.  After discovery, Surrendra filed a series of motions seeking to dismiss the complaint on the grounds of forum non conveniens.  The district court denied the motions, however,

---

[1].  Surrendra states in its brief that ApeeJay "is not a legal entity" (Appellant-Cross-Appellee's Br. 5), and in its answer to the Bhatnagars' complaint, Surrendra alleged that "there is not a separate corporation as ApeeJay Lines."  Joint Appendix ("J.A.") 2.  The Bhatnagars accept Surrendra's characterization of ApeeJay.  Appellees-Cross-Appellants' Br. 4.  We treat Surrendra, ApeeJay, and the APJ KARAN as one defendant for purposes of this appeal.

and after a two-day bench trial during which the court purported to apply Indian law, the court awarded Urvashi a total of $189,331.00 in damages.  Surrendra appeals the judgment, and Urvashi and her mother cross-appeal.  We will affirm in most respects but will remand for a redetermination of damages under Indian law.

I.

A.

The Bhatnagars are a family of Indian citizens.  Sanjay Bhatnagar, Urvashi's father, was hired in India as an assistant engineer aboard the vessel APJ KARAN, one of eight vessels owned and operated in international commerce by Surrendra.  Sanjay boarded the APJ KARAN in the Indian territory of Goa in November 1990.  With Surrendra's permission, Sanjay's wife, son and daughter were to join him on the vessel.

The family had planned to board the vessel in India with Sanjay, but were unable to obtain the requisite visas.  With the Surrendra's assistance, however, Sanjay's wife Kalpana Bhatnagar and her two children flew to the United States and boarded the ship in Portland, Oregon, where the APJ KARAN took on a cargo of grain destined for Alexandria, Egypt.

On board the APJ KARAN, rules and regulations designated areas where unauthorized people were not allowed to go.  Notices were posted in several places indicating which areas were off limits.  For example, there was a sign posted at the top of the stairs leading to the bridge which said "off limits," and a sign posted outside the radio room which said "Navigators

Only."  The captain of the APJ KARAN testified that he spoke with Sanjay Bhatnagar and his family and instructed them not to enter the restricted areas, and Sanjay also testified that he spoke with his family concerning the areas they were not allowed to visit.

Despite these rules, on March 17, 1991, the ship's steward took Urvashi to the bridge -- an "off limits" area -- while he was serving tea to the duty officer.  Once on the bridge, the steward left Urvashi, and the six-year old approached the helmsman.  The helmsman picked her up and placed her upon a railing facing the windows and a "clearview screen," a device which repels rain and other moisture by revolving at a high rate of speed.  It was rainy that day, and the clearview screen revolved rapidly to provide the helm with an unimpeded view of the ocean ahead.

For some reason, the helmsman decided to show Urvashi how to play a "game":  he feigned putting his hand on the clearview screen, then encouraged her to do the same.  However, when Urvashi followed the helmsman's lead her hand slipped, and the clearview screen severely injured her right hand and portions of her arm.

The APJ KARAN was steaming in international waters when the accident occurred.  The captain immediately radioed for help and was transferred to the United States Coast Guard, which directed the captain to divert the vessel to the nearest landfall.  That turned out to be the island of Antigua, and Urvashi, her brother and her mother were evacuated there.

After receiving emergency medical treatment on Antigua, on March 20, 1991 Urvashi and her mother and brother flew to New York, where their relatives, who are doctors, arranged for further medical assistance. The three Bhatnagars (later joined by Sanjay) entered the United States on emergency medical visas valid for six months.

Despite the expiration of their emergency medical visas in September 1991, the Bhatnagars have remained in New York living with relatives since the accident. Urvashi has undergone therapy for her wounds and has attended school in West Islip, New York. In all, Urvashi had a series of six operations from March 1991 through May 1992 to repair her hand.

B.

Urvashi and Kalpana Bhatnagar brought suit in September 1992 against Surrendra, ApeeJay Lines, and the APJ KARAN in the United States District Court for the Southern District of New York. Urvashi alleged negligence, lack of adequate medical care and gross negligence, and Kalpana claimed loss of services resulting from the injuries to her daughter. When the APJ KARAN was docked at the Port of Philadelphia in October 1992, however, the plaintiffs transferred the case to the United States District Court for the Eastern District of Pennsylvania, and Surrendra issued to the plaintiffs a letter of undertaking of $2 million in lieu of the vessel's arrest and detention in Philadelphia.

After substantial discovery, Surrendra moved to dismiss the Bhatnagar's complaint on the ground that it was barred by the

forum selection clause in Sanjay Bhatnagar's employment contract[2] or, alternatively, that the district court should exercise its discretion and dismiss the case under the doctrine of forum non conveniens. The district court denied the initial motion, denied Surrendra's motion for reconsideration or certification of the forum non conveniens ruling under Fed. R. Civ. P. 54(b), and also denied a second motion for reconsideration filed after further discovery. Thus, the case went to trial.

The district court, after a bench trial in which it purported to apply Indian law, awarded Urvashi $33,133 in pecuniary damages for past medical expenses, $6,000 for future medical expenses, and $150,000 for pain and suffering, disability, disfigurement, loss of enjoyment of life, mental anguish and emotional injury. The court ruled in favor of Surrendra on Kalpana Bhatnagar's claims, finding that she had not proven any loss of service or psychiatric injury as a result of Urvashi's injuries.

Surrendra appeals the denial of the district court's rulings with respect to forum non conveniens and also contends that the district court made numerous errors at trial. Urvashi and Kalpana Bhatnagar cross-appeal the adequacy of the judgment in favor of Urvashi and also challenge the district court's judgment in favor of Surrendra on Kalpana Bhatnagar's claims. The district court had jurisdiction pursuant to 28 U.S.C. § 1333. We have jurisdiction under 28 U.S.C. § 1291.

---

[2]. This ground is not pressed by Surrendra on appeal.

II.

Surrendra makes three claims of error:  (1) the district court abused its discretion when it failed to dismiss the case under the doctrine of forum non conveniens; (2) the court erred in imposing liability upon Surrendra; and (3) the court erroneously calculated Urvashi's damages.  We address each of these issues in turn.

A.

It is undisputed that the parties in this case are Indian nationals and the ship on which Urvashi's accident occurred was an Indian-flagged ship on the high seas.  Before the district court rejected Surrendra's motion to dismiss on the grounds of forum non conveniens and proceeded to trial, the only links with the United States present in this case were the following:  (1) the Bhatnagars claim residence in the United States; (2) Urvashi was treated in the United States by doctors who were therefore available here to testify about the nature and extent of her injuries; and (3) the Bhatnagars were able to secure a letter of undertaking by Surrendra in the United States -- after the suit was filed -- when the APJ KARAN dropped anchor in the Port of Philadelphia.

Given these circumstances, it is hardly surprising that Surrendra argued to the district court that this case should be heard in India, rather than the United States.  Surrendra contended that the case had a close factual nexus with India and an absence of ties to the United States.  The company also submitted an affidavit of an Indian law expert noting that India

has a well-developed legal system which would be able to handle the issues presented in this case.  Furthermore, although in effect conceding that the Indian legal system moves much less expeditiously than our domestic courts, Surrendra submitted another affidavit stating that if the case were refiled in India, it would join in petitioning the appropriate judicial officer for expedited hearing of the matter, and that it would not file any unnecessary pleadings or requests that would impede the case. Surrendra's legal expert, moreover, opined that because of Urvashi's young age, the Calcutta High Court (which would hear the case) "would undoubtedly grant an `expedited hearing' request" if the parties made such a motion.  Joint Appendix ("J.A.") 240.  Despite Surrendra's arguments, however, the district court refused to dismiss.

Surrendra complains that the district court abused its discretion not only when it failed to grant this original motion, but also when it rejected Surrendra's motion for reconsideration and, later, rejected a second motion seeking reconsideration because of alleged discovery abuses by the Bhatnagars.  We conclude that none of Surrendra's contentions has merit.

1.

A district court's determination with respect to forum non conveniens "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 178 (3d Cir. 1991) (Lacey II), quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). Certainly, our case law demands that we accord deference even to a trial court's decision to refuse to exercise its lawful jurisdiction, dismiss on grounds of forum non conveniens and deny the plaintiff the opportunity to litigate in a United States court. Our deference should be at least as great, if not greater, when a district court decides not to dismiss.[3] The district court is capable of measuring its own

---

[3]. A rough suggestion of the deference accorded district court decisions rejecting motions to dismiss on the ground of forum non conveniens is found in the case law: while hundreds of forum non conveniens decisions have been reported over the years, one article concluded that, as of March 1991, only six reported decisions involved pretrial decisions not to dismiss. See Note, Review and Appeal of Forum Non Conveniens and Venue Transfer Orders, 59 Geo. Wash. L. Rev. 715 at 727-28 (1991). "Only once did an appellate court reverse the denial of a motion to dismiss for forum non conveniens." Id. at 728 (footnotes omitted). That case was Gonzalez v. Naviera Neptuno A.A., 832 F.2d 876 (5th Cir. 1987), a case very different from the one before us. In Gonzalez, "the overwhelming majority" of the witnesses were in the alternative jurisdiction, and the Fifth Circuit found there would be difficulties in enforcing a judgment against the defendant in the United States. Gonzalez, 832 F.2d at 879. Here, by contrast, Urvashi and her mother, as well as Urvashi's treating physician, were present in the United States, and the letter of undertaking would make it possible to enforce a judgment against Surrendra in the United States. Even more importantly, in Gonzalez there was no issue of whether the alternative forum in that case (Peru) was adequate. As noted infra pp. 15-23, here that issue is dispositive.

docket and assessing the practical administrative difficulties that may flow from denying such a motion. Indeed, while we may be able to provide some perspective on the systemic consequences of individual denials of forum non conveniens motions -- in terms of future case load and other administrative difficulties that may result -- we are aware of no evidence suggesting that district courts are unable similarly to take the long view of a particular situation. To the contrary, we believe that district courts are well aware of the caseload pressures they face and rather zealous in their efforts to control their ever-burgeoning responsibilities. Given the incentives that press our district courts to reduce their caseload, we should take particular care before second-guessing a district court that rejects a forum non conveniens motion after considering the factors that we and the Supreme Court have deemed relevant.

The factors to be evaluated in assessing whether to dismiss for forum non conveniens are by now familiar. First -- and of dispositive significance here -- a district court cannot dismiss on forum non conveniens grounds if that decision would render a plaintiff unable to pursue his or her action elsewhere. That is, since a district court entertaining a forum non conveniens motion has jurisdiction over the dispute, it is only when some other forum that would also have jurisdiction is better suited to adjudicate the controversy that a district court may exercise its discretion and dismiss the case. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947) ("In all cases in which the doctrine of forum non conveniens comes into play, it

presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them").  Thus, as we explained in Lacey v. Cessna Aircraft Co., 862 F.2d 38 (3d Cir. 1988) (Lacey I), at the outset of its analysis, "[a] district court entertaining a forum non conveniens motion must first decide whether an adequate alternative forum exists to hear the case."  Id. at 43.

Provided that an adequate alternative forum is available, the district court must address an additional threshold issue when the case is brought by a foreigner -- namely, the amount of weight that should be accorded to the plaintiff's decision to sue in the United States.[4]  Then, "the district court must consider and balance several private and

_____

[4].  Ordinarily, a plaintiff's choice of forum is entitled to great deference, but the amount of deference is lessened when a foreigner has brought suit because we are more skeptical of a foreigner's claim that a United States forum is in fact the most convenient forum available. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  The fact that a plaintiff is a foreigner does not disqualify him or her from suing in the courts of the United States, nor does it mean that his or her decision to sue in the United States is entitled to no deference.  "Piper[ Aircraft]'s language about according less deference to a foreign plaintiff's forum choice is `not an invitation to accord a foreign plaintiff's selection of an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule.'"  Lacey v. Cessna Aircraft Co., 862 F.2d 38, 45-46 (3d Cir. 1988) (Lacey I), quoting and adding emphasis to In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982, 821 F.2d 1147, 1164 n.26 (5th Cir. 1987).  Although we have acknowledged that the deference evaluation cannot be done with mathematical precision, the district court must provide some reasoned indication of how much deference it is according to the particular foreign plaintiff's decision to sue in the United States.  Lacey v. Cessna Aircraft Co., 932 F.2d 170, 179 (3d Cir. 1991) (Lacey II).

public interest factors that are relevant to the forum non conveniens determination." Lacey I, 862 F.2d at 43.[5]  It is the defendant's burden to demonstrate that forum non conveniens dismissal is warranted.  E.g., Lacey I, 862 F.2d at 43-44; Gulf Oil, 330 U.S. at 508.  Surrendra failed to carry that burden because it did not make its threshold demonstration that an adequate alternative forum was available for this litigation.

The Bhatnagars argued in the district court that India did not constitute an adequate alternative forum because its court system was in a state of virtual collapse.  Plaintiffs submitted affidavits from Marc S. Galanter and Shardul Shroff in

---

[5].    Certain of these factors were identified in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947).  The private interest factors include such considerations as "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action," and other factors "that make trial of a case easy, expeditious and inexpensive." Id. at 508.

With respect to the public interest factors, the Supreme Court has noted that courts should be wary of increasing the congestion in domestic courts and forcing jury duty upon those who have no relation to or interest in a particular controversy. Gulf Oil, 330 U.S. at 508-09.  Additionally, courts should prefer to have cases adjudicated in the forum familiar with the law to be applied, instead of taking it upon themselves to become educated about foreign law. Id. at 509.  We have further explained that "[i]n evaluating the public interest factors the district court must `consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.'" Lacey I, 862 F.2d at 48, quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988).

The Supreme Court has cautioned, however, that the list of public and private factors in Gulf Oil "is by no means exhaustive, and some factors may not be relevant in the context of a particular case." Van Cauwenberghe, 486 U.S. at 528-29.

support of this contention (respectively, the "Galanter Aff." and the "Shroff Aff."). Surrendra responded by proffering the affidavit of Talat M. Ansari, who stated that there are numerous ways in which litigation can be expedited in India, including appointment of special judges, intervention by the Supreme Court of India or State High Court, or even requests by the parties for expedition. J.A. 240. Furthermore, Ansari stated that "given the tender age of the child, the Calcutta High Court (which would be the court in which the action would have to be filed, given the amount of compensation claimed) would undoubtedly grant an `expedited hearing' request." Id. Surrendra also offered the affidavit of Captain Khosla, the company's General Manager, who promised that if the district court dismissed this case Surrendra would cooperate in seeking expedited treatment of any suit brought by the Bhatnagars in India.

The district court agreed with the Bhatnagars. Crediting their legal experts, the court found that the Indian legal system has a tremendous backlog of cases -- so great that it could take up to a quarter of a century to resolve this litigation if it were filed in India. J.A. 15-16. Finding that "this remedy is inadequate and unsatisfactory," the court ruled that dismissal was inappropriate. Id at 17.[6]

---

[6]. Although the district court also evaluated the Bhatnagars' case under the private and public interest factors of Gulf Oil, we do not reach that analysis because of our affirmance on the threshold issue of whether an alternative forum is available.

Surrendra contends on appeal that this analysis constituted an abuse of discretion for two central reasons. The company contends that the district court committed legal error in finding that mere litigation delay can render an alternative forum inadequate, and that in any event the court's fact-finding with respect to delay in the Indian legal system was clearly erroneous. We disagree.

(a)

Surrendra's first attack focuses on the court's premise that litigation backlog can render an alternative forum inadequate for purposes of <u>forum</u> <u>non</u> <u>conveniens</u> analysis. Surrendra argues that the alternative forum factor may be used to deny a motion to dismiss only in "extreme cases, such as where an action is barred by an alternative forum . . . ." Appellant-Cross-Appellee's Br. 14. Quoting <u>Piper Aircraft</u>, Surrendra contends that unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all" (<u>Piper Aircraft</u>, 454 U.S. at 254), the alternative forum must be deemed to be adequate. Appellant-Cross-Appellee's Br. 14. Thus, although Surrendra does not say so in as many words, it apparently believes that the district court committed legal error in finding that mere delay can render the Indian court system inadequate for purposes of a <u>forum</u> <u>non</u> <u>conveniens</u> inquiry.

The Supreme Court in <u>Piper Aircraft</u> stated that the alternative forum requirement "[o]rdinarily . . . will be satisfied when the defendant is `amenable to process' in the

other jurisdiction."  Piper Aircraft, 454 U.S. at 254 n.22,
quoting Gulf Oil, 330 U.S. at 506-07.  Yet the Court qualified
this statement:

> In rare circumstances, however, where the
> remedy offered by the other forum is clearly
> unsatisfactory, the other forum may not be an
> adequate alternative, and the initial
> requirement may not be satisfied.  Thus, for
> example, dismissal would not be appropriate
> where the alternative forum does not permit
> litigation of the subject matter of the
> dispute.

Id. (emphasis added).

We have never addressed the issue of whether litigation
delay could render an alternative forum so "clearly
unsatisfactory" as to be inadequate.  Nor has the Supreme Court
or any of our sister circuits.  Thus, we face an issue of first
impression.

At the outset of this discussion, it is necessary to
recognize that delay is an unfortunate but ubiquitous aspect of
the legal process.  Our own courts suffer from delay, as does any
other system that attempts to accord some modicum of process.
E.g., Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 519-20 (1981)
(noting that delay is pervasive aspect of American courts); see
also Report of the Federal Courts Study Committee 5-6 (Apr. 2,
1990).  Because litigation delay is so pervasive, minor delay
could not possibly serve to undermine the adequacy of an
alternative forum.  Thus, we agree with those courts that have
found delays of a few years to be of no legal significance in the
forum non conveniens calculus.  E.g., Brazilian Investment

Advisory Services, Ltda. v. United Merchants & Manufacturing, Inc., 667 F. Supp. 136, 138 (S.D. N.Y. 1987) (delay of up to two and one-half years); Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L., 708 F. Supp. 83, 85 (S.D. N.Y. 1989) (delay of at least two years "and possibly longer").

At some point, however, the prospect of judicial remedy becomes so temporally remote that it is no remedy at all. Thus, in a variety of circumstances, we and other courts have recognized that delay can, in extreme cases, render meaningless a putative remedy. This principle has been recognized, for example, in the context of habeas corpus law. In Burkett v. Cunningham, 826 F.2d 1208 (3d Cir. 1987), we excused a state prisoner's failure to exhaust his state-law remedies before seeking federal habeas corpus relief on the ground that he had suffered five and one-half years of delay in attempting to vindicate himself in state court. Such delay, we found, "as a matter of law excuses exhaustion" (id. at 1218), and we reiterated the well-worn but nevertheless truthful aphorism that "justice delayed is justice denied" (id.). The same result has obtained in our sister circuits. E.g., Simmons v. Reynolds, 898 F.2d 865 (2d Cir. 1990) (six-year delay in state appeal excused exhaustion requirement in federal habeas action); Harris v. Champion, 938 F.2d 1062 (10th Cir. 1991) (four-year delay before briefing of prisoner's state appeal and indeterminate amount of time before appeal would be decided); Coe v. Thurman, 922 F.2d 528 (9th Cir. 1990) (three-year delay).

Similarly, it is well established in administrative law that excessive delay may, in some circumstances, excuse exhaustion requirements. E.g., McCarthy v. Madigan, 503 U.S. 140, 147 (1992); Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 587 (1989); Gibson v. Berryhill, 411 U.S. 564, 575 n.14 (1973). Although part of the concern voiced in such cases undoubtedly stems from the possibility that a litigant's subsequent court action may be prejudiced by undue postponement, courts have also recognized the fundamental principle that a remedy too long delayed is tantamount to no remedy at all. E.g., Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 591 (1926) ("[p]roperty may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them").

Returning to the facts at hand with these legal principles in mind, the delay in the Indian legal system described by plaintiffs' experts in this case is much more than mere minor delay of the sort long tolerated, albeit ruefully, in courts of justice. To the contrary, the delay described by the Bhatnagars' experts is profound and extreme. J.A. 41, 55-65 (Galanter Aff., characterizing Indian legal system as having delays of "Bleak House dimensions"); J.A. 1368, 1374 (Shroff Aff., quoting former Chief Justice of India as saying that Indian legal system is "almost on the verge of collapse"). The district court explained that, "[i]f this case is an `average' case, Calcutta's High Court would take 15-20 years to resolve it. Shroff Aff., p. 7. However, the case would also be subject to

another three to six years of appeals after that."  J.A. 16.

Thus, "[i]f this case were to proceed in the Indian court system it might not be resolved until [Urvashi] is an adult."  J.A. 17.

Wherever the line might be drawn separating tolerable delay from intolerable -- that is, delay that does not vitiate a remedy and that which does -- delays of up to a quarter of a century fall on the intolerable side of that line.  Delays of such egregious magnitude would render a remedy "clearly inadequate" under Piper Aircraft.  Thus, we agree with the district court that delay of the magnitude described in the Bhatnagars' experts' affidavits can render an alternative forum inadequate as a matter of law.

(b)

Surrendra also argues, however, that regardless of whether delay of such proportions can render an alternative forum inadequate, the district court's fact-finding concerning delay in India was fatally flawed in this case.  Specifically, Surrendra contends that the district court credited without question the plaintiffs' Shroff Affidavit, while ignoring Surrendra's affidavits from Ansari and Khosla.  Appellant-Cross-Appellee's Br. 14-15.  However, keeping in mind that it was Surrendra's burden to prove that India was a viable alternative forum, the company's arguments are unpersuasive.

Contrary to Surrendra's contention that the district court "unquestioningly" accepted the Shroff affidavit, the record reflects that the district court relied on both the Shroff and Galanter affidavits in making its fact-finding.  J.A. 15 (citing

both Shroff Aff. and Galanter Aff.).  Additionally, despite Surrendra's complaints about the district court's reliance on plaintiffs' experts' affidavits, the company fails to provide a single reason why the Galanter and Shroff affidavits were not worthy of credence.  Thus, Surrendra's indictment of the district court's reliance on the Bhatnagars' evidence amounts to a plaintive assertion that "my experts were better."

In addition to failing to undermine the credibility of the Bhatnagars' affiants, however, Surrendra also failed to counter effectively the Bhatnagars' affidavits with evidence of its own demonstrating that the delays in India's legal system either were not present or would not make a suit by the Bhatnagars in India an exercise in futility.  Surrendra's expert, Ansari, stated that there are ways that parties may expedite litigation in India, but with one exception he did not state that any of the methods he listed would in fact lead to expedited treatment of a suit filed by the Bhatnagars.  The sole exception was his assertion that the Calcutta High Court "would undoubtedly grant an `expedited hearing' request" in Urvashi's case "given the tender age of the child . . . ."  J.A. 240.  Evidently, the district court did not believe Ansari, because it held that the Bhatnagars' suit was "an average case which would probably not receive expedited treatment."  J.A. 16.

We do not believe this ruling was clearly erroneous.  Ansari cited no legal authority for his hopeful pronouncement, whereas plaintiffs' experts, Galanter and Shroff, provided both statistical and anecdotal evidence documenting litigation delays

and tending to show that a suit like the Bhatnagars' would likely not receive expedited treatment.[7]

Turning to the Khosla affidavit, the company contends that the court "ignored" this evidence, but that also is simply not true. Khosla stated that if the Bhatnagars' suit were brought in India, Surrendra would cooperate in seeking expedited treatment of the matter and would not take actions that would unnecessarily interfere with swift resolution of the case. He also stated that if Surrendra failed to meet his promises, the company agreed that the district court could reassume jurisdiction over the case. As Surrendra is forced to concede (Appellant-Cross-Appellee's Br. 16), however, the district court acknowledged on the record that it had reviewed the Khosla affidavit and "recognize[d] that the defendants would not delay and would cooperate in requesting the Court to hear the matter expeditiously" in India (J.A. 285). The court was unpersuaded by this evidence, noting that even though Surrendra had promised to cooperate, "there's nothing that gives me comfort that the matter would be heard in India within a reasonable time." J.A. 285. It

---

7. See Galanter Aff., J.A. 60-63 (noting backlog); id. 63-65 (average duration of reported tort suits 1975-84 was 12 years and nine months); id. 68-70 (results of Bhopal litigation "gives little reason to believe that the Indian courts presently afford an adequate forum for an ordinary personal injury case like this one"); Shroff Aff., J.A. 1375 (stating that if suit were filed in Calcutta High Court it would "normally" take "about 15-20 years before it is finally disposed of since, at present, there are only two judges who are singly hearing suits and proceedings for final disposal"); id. (quoting retired Chief Justice of India in 1985 speech as noting that "[t]he delay in the disposal of cases has affected not only the ordinary type of cases but also those which, by their very nature, call for early relief").

is clear from the record, therefore, that far from "ignoring" the Khosla affidavit, the district court concluded that Surrendra's promise to cooperate in trying to expedite litigation in India did not amount to proof that the litigation would avoid the unreasonable delays that plaintiffs' experts said were endemic in that judicial system. Thus, it was not clearly erroneous for the district court to decide that India was not an adequate alternative forum based on the evidence before it.

Surrendra contends that "[e]very other court which has considered this issue has found that India courts do provide an adequate alternative forum in the forum non conveniens context." Appellant-Cross-Appellee's Br. 17. Even if that were so, it would be irrelevant to the issue of whether Surrendra met its burden of proof on the issue here. We note, however, that the cases relied upon by Surrendra are factually distinguishable. In In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984, 809 F.2d 195 (2d Cir. 1987), the court merely found that the district court's finding that India was a reasonably adequate alternative forum did not constitute clear error. Id. at 202-03. Significantly, the district court in that case had found that India was an adequate alternative forum only because it expected that the Indian Government would not treat the litigation arising from the Bhopal tragedy "in ordinary fashion," given that it was the "most significant, urgent and extensive litigation ever to arise from a single event . . . ." In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984, 634 F. Supp. 842, 848 (S.D. N.Y. 1986).[8]

---

[8]. In the only other case cited by Surrendra which specifically addressed litigation delay in India, the court noted that the plaintiff's evidence of delay consisted of "one newspaper article, which includes anecdotal references to congestion in Indian courts." Chhawchharia v. Boeing Co., 657 F. Supp. 1157, 1160 (S.D. N.Y. 1987). Such meager support is nowhere near as extensive as the evidence submitted by the Bhatnagars in this case. Furthermore, in both Chhawchharia and R. Maganlal & Co. v. M.G. Chemical Co., Inc., No. 88 Civ. 4896 (MJL), 1990 WL 200621 (S.D. N.Y. 1990), also cited by Surrendra, the district courts relied upon In re Union Carbide Corp. Gas Plant Disaster, 809 F.2d 195 (2d Cir. 1987), for the proposition

(d)

(..continued)
that India provided an adequate alternative forum.  As noted in
the text, relying on that case for that proposition is at least
misleading, given the special circumstances of the Bhopal
disaster litigation and the other significant factors that formed
the basis of the decision.  Surrendra's other putative precedents
are similarly unpersuasive.  There is no suggestion that the
issue of delay was briefed in Neo Sack, Ltd. v. Vinmar Impex,
Inc., 810 F. Supp. 829 (S.D. Tex. 1993), or Vaz v. United States
Surgical Corp., No. B-90-328 (WWE), 1991 WL 47341 (D. Conn.
March 13, 1991), neither of which expended any significant effort
in determining the adequacy of India's legal system as an
alternative to litigation in the United States.  Surrendra also
cites ETPM v. Noble Drilling Corp., No. H-92-0682 (S.D. Tex.
Jan. 12, 1993), but does not even provide us with a copy of the
case, so that we could not rely upon it even if we were disposed
to credit an unpublished and unreported district court decision
from another circuit.

We should not be read to conclude that the courts of India are always inadequate fora, making forum non conveniens dismissal inappropriate whenever an Indian national sues in the United States. That is neither the thrust nor the end point of our analysis. In reaching its conclusion that India was an inadequate alternative forum in this case, the district court was essentially concluding that Surrendra had not met its burden of proof on that threshold issue. We agree.[9] It may well be that the next defendant to face the same issue faced by Surrendra would reach a different result because it would marshal more -- or better -- proof. Furthermore, another district court presented with the same raw evidence might reach different factual conclusions, and we might be constrained under our lenient standards of review to affirm in that case, as well. Here, however, the district court did not commit legal error in concluding that delay can render a putative alternative forum clearly inadequate. Nor did it commit clear error in its factual findings relating to the issue of delay. That being so, we are constrained to affirm the district court's exercise of discretion

_____

[9]. While defending the district court's finding that India is an inadequate alternative to the United States because of the delays endemic in the Indian legal system, on appeal the Bhatnagars also argue that we can affirm the district court's finding in this respect on an alternative ground. According to the Bhatnagars, their claims are now time-barred in India; thus, they argue, "the court [sic] in India cannot hear the case since the statute of limitations has expired and cannot be waived." Appellees-Cross-Appellants' Br. 10. Because we have found that the district court did not abuse its discretion in ruling that India was an inadequate forum based on the evidence of delay presented to that court, we do not reach the Bhatnagars' statute of limitations argument.

under which it retained jurisdiction over this case and adjudicated the Bhatnagars' claims.

2.

Ten days after losing the forum non conveniens motion, Surrendra submitted a motion for reconsideration which included the unsworn declaration of Shri Venkiteswaran pursuant to 28 U.S.C. § 1746. J.A. 289.[10] Venkiteswaran agreed with the plaintiffs' experts on Indian law that "if no order for expedition is made there could be" significant delay -- "anywhere between 10 and 12 years in Bombay and about 10 to 15 years in Calcutta" -- before the Bhatnagars' claims were resolved. J.A. 292. However, Venkiteswaran disagreed with Surrendra's own original India law expert (Ansari) as well as both of plaintiffs' experts by stating that, contrary to the assumptions of those experts, the Bhatnagars' case could be adjudicated in India as an admiralty case. Id. Treating the suit as an admiralty action, Venkiteswaran stated, would reduce the delay to "4 to 5 years if the plaintiffs pursue their action diligently and if the defendants are not obstructive in having the matter heard." Id. In its motion for reconsideration, Surrendra argued that the Venkiteswaran affidavit demonstrated that the court had erred in finding that India was an inadequate forum, and that the court had abused its discretion in evaluating the public and private interest factors implicated by the case. Alternatively,

_____

[10]. 28 U.S.C. § 1746 permits parties to submit unsworn declarations in lieu of sworn statements in certain circumstances.

Surrendra requested that the district court certify the forum non conveniens issue for immediate review. The district court denied this motion without a written opinion, noting in its order that "[t]he court considered the factors mentioned in the Motion in reaching its original conclusion." J.A. 22.

Surrendra contends on appeal that the district court abused its discretion in failing to change its mind and dismiss this case on forum non conveniens grounds in the face of Surrendra's new evidence.[11] We disagree for two reasons. First, Surrendra's motion for reconsideration strikes us as a classic attempt at a "second bite at the apple." Having failed in its first effort to persuade the court to dismiss on forum non conveniens grounds, Surrendra simply changed theories and tried again, contradicting its earlier evidence with its factual support for the new theory. We have explained that although we are not "prepared to enunciate a rule precluding [a] district court from reconsidering the issue" of forum non conveniens "on an expanded record in all circumstances," nevertheless we "assume that such reconsideration [will] be limited to exceptional circumstances." Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 608 (3d Cir. 1991). Whatever other circumstances may

_____

[11]. In its brief, Surrendra also suggests that, in the alternative, the district court should have granted the company's request for interlocutory review of the forum non conveniens decision under Fed. R. Civ. P. 54(b). Appellant-Cross-Appellee's Br. 18 n.1. The company does not appeal the denial of certification, however, so we need not address the knotty question of whether we could take jurisdiction over a denial of Rule 54(b) certification. See Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 81 (3d Cir. 1994).

justify reconsideration, mere presentation of arguments or evidence seriatim does not.  See Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990) (reargument "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided").

In any event, the district court was entitled to disbelieve the Venkiteswaran declaration.  Venkiteswaran contradicted the Ansari affidavit, which –– according to Surrendra in its earlier papers –– had accurately stated the law. Thus, the district court may reasonably have concluded that the putative new "expert" testimony was of no evidentiary value. Furthermore, Venkiteswaran provided the district court with no citation to legal authority suggesting that his conclusion that the Bhatnagars could bring an admiralty action in India was entitled to any weight.  Given the incompatibility of his testimony with that of Ansari and the Bhatnagars' experts, the district court may reasonably have concluded that it should not credit the newly proffered opinion.  We cannot conclude that the district court abused its discretion in denying the motion for reconsideration.

After denial of the motion for reconsideration, discovery proceeded apace for another two and one-half months. Then, on the day after the Bhatnagars' trial brief was submitted, Surrendra filed a Motion for Relief from the Order Denying Claimant's Motion to Dismiss on Grounds of Forum Non Conveniens. See J.A. 9. In this motion, Surrendra again contended that the district court should reconsider the motion to dismiss. This time, Surrendra premised its request for relief on allegations that the Bhatnagars, in a wilful abuse of discovery, had misrepresented their immigration status to Surrendra and the court. In fact, Surrendra contended, the Bhatnagars had been illegal aliens when they first brought their action in Pennsylvania. Had the Bhatnagars not wilfully misrepresented their immigration status to the court, the company claimed, the court would have granted the forum non conveniens motion because the withheld information would have negated the court's findings of fact -- namely, that Urvashi intended to reside in the United States until all medical treatment was completed and that she sought to remain permanently in the United States, if permitted. Surrendra apparently also contended that the motion to dismiss should be reconsidered and granted as a sanction for the Bhatnagars' bad faith during discovery.

The district court rejected this third bite at the apple, noting that this case was "not an immigration appeal." J.A. 26. Furthermore, although the court stated that the "court's role is not to determine . . . whether the plaintiffs

reside here legally," the court explained that it had "considered the possibility that the minor plaintiff could be deported" at the hearing on Surrendra's initial motion to dismiss. Id. (Indeed, the court had done so, apparently aware at that time that the plaintiffs were potentially residing in the United States illegally. J.A. 272.) Additionally, relying on Hagl v. Jacob Stern & Sons, Inc., 396 F. Supp. 779, 784 (E.D. Pa. 1975), the court ruled that "even if the minor plaintiff is an illegal alien, she still has the right to use this country's courts to sue those persons who allegedly physically injured her." J.A. 26.

The district court did not abuse its discretion in denying this second motion for reconsideration, which amounted to a third motion to dismiss on the ground of forum non conveniens, and which asserted grounds already briefed to the district court. Reconsideration "should not be granted where it would merely `allow wasteful repetition of arguments already briefed, considered and decided.'" Brambles USA, 735 F. Supp. at 1240, quoting Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D. N.Y. 1989). Furthermore, despite Surrendra's protestations of bad faith and lack of candor by the Bhatnagars, the evidence does not compel the conclusion that the Bhatnagars acted with bad faith, and the district court found no such bad faith. In short, Surrendra has provided no reason to upset the district court's discretionary decision to deny this final motion for reconsideration.

B.

Turning to the merits of the trial, Surrendra next contends that the court erred in finding the company negligent under Indian law.[12]  Surrendra's challenge takes two forms. First, the company alleges that the court erred in finding that liability could be imposed upon the company on the ground that Surrendra's duty officer should have known of Urvashi's presence on the bridge at the time of the accident.  Alternatively, Surrendra argues that the court erred in denying Surrendra's motion for a directed verdict on the ground that there was insufficient evidence either that Surrendra's steward and helmsman had acted within the scope of their employment or that the duty officer had become aware of Urvashi's presence on the bridge.  Surrendra's arguments, however, leave us unpersuaded.

---

[12].  In their cross-appeal, the Bhatnagars contend that the district court erred in concluding that Indian law applied.  They reason that because Indian and American law are essentially identical with respect to principles of negligence, the court did not have to find that Indian law applied because there was no "true conflict" of law.  See Coons v. Lawlor, 804 F.2d 28, 30 (3d Cir. 1986).  We agree with the Bhatnagars that Indian and American negligence law are essentially the same with respect to duty, breach, cause-in-fact and proximate cause, as well as how one determines the scope of the duty owed by the defendant to the plaintiff, if any.  However, as we discuss infra pp. 33-36, Indian courts award damages in a manner different from American courts.  Thus, the district court did not err in making a choice of law inquiry.  Furthermore, despite the Bhatnagars' contentions to the contrary, it is clear that, under Lauritzen v. Larsen, 345 U.S. 571 (1958), Indian law applies to this dispute.  The law of the flag and the allegiance of the parties to India at the time of the accident point strongly towards the application of Indian law, and the Bhatnagars' subsequent sojourn in the United States does not create sufficient counterbalance to require application of domestic law to the dispute.

The district court made the following findings of fact relevant to this portion of the appeal:

16. On March 17, 1991, the ship's steward, Mr. Abdul Mutalib, took the plaintiff, Urvashi, to the bridge of the vessel.

17. At the time in question the duty watch officer was on the bridge together with the duty helmsman. The duty watch officer's duties included enforcing the ship's rules that the Bridge of the ship was off limits to all unauthorized persons.

18. At approximately 4:00 p.m. while the plaintiff and Mr. Mutalib were on the bridge, the helmsman picked up plaintiff Urvashi and placed her on a ledge in front of the clear view screen on the bridge. . . .

20. The helmsman of the vessel showed the minor plaintiff how to put her hand on the clear screen a [sic] part of a "game." He feigned putting the palm of his hand on the clear screen [sic] and asked her to do likewise. When minor plaintiff placed her hand on the clear view screen, her right hand and portions of her arm were injured. The helmsman fainted on the bridge.

21. The defendant admits that the acts of the helmsman and steward were negligent. The steward was taking tea to the duty officer on the bridge at the time just before the accident.

22. The duty officer, who is in charge of the bridge, did not stop the helmsman and steward from acting negligently. The duty officer should have known of their permitting the minor plaintiff to play on the bridge.

23. The duty officer, acting for the defendant, breached a duty of care owed to plaintiffs [sic] by permitting plaintiff to be on the bridge, an unauthorized area, and on the ledge in front of the clear view screen. The duty officer should have known of the minor plaintiff's presence on the bridge.

24. The duty officer's failure to stop the helmsman's and steward's negligent acts was a substantial

> factor in bringing about the harm to the plaintiff.
>
> 25. Plaintiff's injury was proximately caused and caused in fact by defendant's breach of duty owed to plaintiff.
>
> 26. It was reasonably foreseeable to the duty officer that plaintiff was in danger of sustaining injury on the bridge in general and on the ledge in front of the clear view screen in particular.

J.A. 31-33. As these findings of fact indicate, the district court found that the duty officer had a duty to prevent Urvashi and other unauthorized persons from being on the bridge and to enforce safety precautions during his watch. This finding is amply supported in the record by the unambiguous testimony of the Captain of the APJ KARAN. J.A. 1055. The duty officer breached that duty by failing to act in a manner that would have permitted him to avert the negligent actions of the steward and helmsman.

Contrary to Surrendra's argument, the district court's decision did not constitute a finding of strict liability. In fact, we find Surrendra's contention quite puzzling. It is permissible to find that someone breached a duty of care owed to another without actually knowing that a victim has been harmed until after the fact, so long as a reasonable person would know that acting or failing to act would create an unreasonable risk of harm to a class of persons that includes the plaintiff. See generally Restatement (Second) of Torts § 281, comment "c" (1965). Surrendra concedes that under Indian law, like American law, negligence

> consists in the neglect of ordinary care or skill towards a person to whom the defendant owes a duty of observing ordinary care . . .

the standard of care which would determine
whether or not there has been a breach of
duty is that of a reasonable person who must
be presumed to have foreseen the consequence,
or at least, ought to have seen it.

Appellant-Cross-Appellee's Br. 37.  Under this standard, the
district court could properly conclude that, had the duty officer
(Surrendra's agent, acting within the scope of his employment)
reasonably fulfilled his duty to enforce the rules of the bridge,
Urvashi would not have been harmed.  Thus, the district court did
not err in finding Surrendra liable.

Furthermore, because of this conclusion, it was
entirely proper for the district court to reject Surrendra's
motion for directed verdict based on the sufficiency of the
evidence.  It did not matter whether the plaintiffs had
established that the steward and helmsman were acting within the
scope of their employment.[13]  Nor did it matter whether there was
evidence that the duty officer actually knew of Urvashi's
presence on the bridge, given that the district court had
reasonably concluded that if the duty officer had been performing
his job properly, she would not have been.  Thus, the district
court did not err in denying the motion for a directed verdict.

---

[13].  Although we see no reason why the court could not have
concluded that Surrendra was liable through the actions of the
helmsman and steward, the court made no findings to that effect.

C.

Surrendra next contends that the district court erred in awarding Urvashi a total of $189,331.00 in damages, including $39,133 in pecuniary losses and $150,000 in non-pecuniary losses, "including pain and suffering, disability, disfigurement, loss of enjoyment of life, mental anguish and emotional injury, past, present and future as a result of the accident . . . ." J.A. 37. According to the company, the district court's non-pecuniary damages award was grossly excessive under Indian law.[14] We agree with Surrendra that the district court erred in its application of Indian damages principles regarding non-pecuniary damages.

Under Indian law, three principles govern awards of "non-pecuniary" or "general" damages: "(1) Compensation must be reasonable and must be assessed with moderation[;] (2) Regard must be had to awards in comparable cases[; and] (3) sums awarded should, to a considerable extent, be conventional." J.A. 1444 (Opinion of S.C. Pratap (Sept. 16, 1993));[15] J.A. 1397 (Affidavit of Shardul S. Shroff (Sept. 30, 1993)) ("Shroff Aff. II") As the experts for the Bhatnagars and Surrendra agree, in applying these

---

[14]. Surrendra does not appear to contest the district court's award of $39,133.00 in pecuniary damages. See Appellant-Cross-Appellee's Third Step Reply Br. 21. In any event, we find no error in the district court's award of pecuniary damages. See, e.g., J.A. 1443 (discussing permissible pecuniary damages under Indian law).

[15]. This document, an opinion by a former judge of the High Court of Bombay and ex-Chief Justice of Andhra Pradesh, was accompanied by an unsworn declaration of Shri Venkiteswaran under 28 U.S.C. § 1746 (see J.A. 1466), and is admissible under Fed. R. Civ. P. 44.1 for purposes of determining the law of India.

principles Indian courts attempt to make awards comparable and uniform among Indian tort victims. J.A. 1398 (Shroff Aff. II); 1448 (Pratap Opinion). Thus, Urvashi was entitled to an award of non-pecuniary damages, but she was not entitled to an award comparable to what a similarly situated American would receive in this country. Rather, the district court should have sought to award an amount comparable to what a similarly situated plaintiff would have received in India.[16]

Viewed in this light, the district court's award of $150,000 in non-pecuniary damages may be grossly excessive. One American dollar in early 1995 is worth approximately 31.39 rupees.[17] Thus, the district court's award, in rupees, was in the neighborhood of Rs. 4,708,500. The parties' experts have provided a number of examples of compensation by Indian court victims for various personal injuries, but the highest award mentioned is less than 20 percent of the amount awarded in this

---

[16]. As the Supreme Court explained in Lauritzen v. Larsen, 345 U.S. 571 (1952), "[t]he purpose of a conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum." Id. at 591.

[17]. The Wall Street Journal (Feb. 28, 1995) p. C6. Of course, the relevant exchange rate is actually the one in effect on the date of the verdict and judgment in the district court. However, Surrendra asserted that the exchange rate of rupees to dollars was "more than" 31:1 during the relevant period (Appellant-Cross-Appellee's Br. 42, and the Bhatnagars do not contest this assertion. Thus, the calculation in the text is a reasonable approximation of the value of the district court's award in rupees.

case, and it was awarded for an injury that was much more serious than that suffered by Urvashi.[18]

Because the award in this case was so disproportionate to the amounts awarded in other Indian tort cases, we will vacate the award of non-pecuniary damages and remand with instructions to reassess those damages in accordance with Indian law. We leave it to the district court to determine whether there is sufficient material in the record to make that determination, or whether supplemental briefing and evidence will be necessary.[19]

---

[18]. The amounts awarded in the cases cited by the Bhatnagars' damage expert, Shroff, range from 5500 rupees (for damage to a left arm) to 143,400 rupees (for an "arm injury"), although in neither of these extreme cases does Shroff note whether the figure is for both pecuniary and non-pecuniary damages, or only non-pecuniary. J.A. 1400. Surrendra's damages expert, Pratap, describes a great many more cases with a broader range of awards (id. 1448-56), but the largest award listed was 857,352 rupees, awarded to a former judge who was injured in an automobile accident and suffered 100 percent disability and paraplegia below the waist.

[19]. We also note an apparent scrivener's error in the district court's rendition of judgment: also the court's award amounts to only $189,133 ($39,133 + $150,000), the court's judgment was rendered in favor of Urvashi Bhatnagar for $189,331. J.A. 40. Since we are vacating this judgment so that the district court can properly determine non-pecuniary damages under Indian law, the typographical error is of no moment because the district court will undoubtedly correct its calculation upon remand.

III.

We have already addressed and rejected one of the contentions raised in the Bhatnagars' cross-appeal -- namely, that the district court erred in concluding that the law of India applied in this case.  See supra n.12.  However, the Bhatnagars also argue that the court erred in failing to award damages to Kalpana Bhatnagar, and that the court erred in rendering a "clearly inadequate" award in favor of Urvashi.[20]  We address these contentions below.

---

[20].  The Bhatnagars also contend that the district court erred in admitting certain testimony of the Captain of the APJ KARAN which the Bhatnagars contend was hearsay.  However, given that this testimony pertained to the finding of negligence against Surrendra, and given that we have affirmed that finding of negligence, we find that this claim of error is moot.

A.

The district court found that Kalpana Bhatnagar had "not demonstrated a loss of service as a result of plaintiff Urvashi's injury." J.A. 37. In their cross-appeal, the Bhatnagars contend that this finding was erroneous, but they provide no evidence that damages for loss of services are compensable under Indian law (see Appellees-Cross-Appellants' Br. 43-45), whereas Surrendra's expert opined that Kalpana's claim is "unsustainable" under Indian law (J.A. 1458). Furthermore, the Bhatnagars failed to demonstrate that Kalpana lost any of Urvashi's services, even assuming that compensation for such loss is cognizable under Indian law. For these two independent reasons, the district court did not commit error in denying Kalpana recovery.

B.

The Bhatnagars also contend that the district court erred in awarding a "clearly inadequate" award in favor of Urvashi. Their argument, however, is confined to the district court's "non-pecuniary" award, which we have already explained in section II(C) must be vacated and remanded for redetermination because of its excessiveness under Indian law. We reject the Bhatnagars' claim that Urvashi's award was inadequate for the reasons we noted in finding that the award was grossly excessive under Indian law.

IV.

Prophets of litigation doom may contend that our forum non conveniens analysis in this case will cause a flood of litigation as foreigners rush to the United States to bring claims that have nothing to do with our nation, our people or our business. We recognize that the possibility of securing a trial before an American jury, under American law, provides a strong draw to foreigners. Indeed, the Supreme Court itself has recognized that our courts are "extremely attractive to foreign plaintiffs." Piper Aircraft, 454 U.S. at 252.

Still, we are not troubled by the precedential effect of our decision. A careful reading of section II(A) makes clear just how narrow and unusual are the facts and circumstances of this case. Additionally, it is likely that future defendants will develop a record (if such can be made) adequate to support dismissal in similar circumstances. Finally, we have confidence that our district courts well understand the weight of their dockets and will not hesitate to dismiss those actions that have no business being before them. Of course, if they do not, we will exercise our superintendence at that time, but we see no reason to reverse a defensible decision to retain jurisdiction in the face of a claim of forum non conveniens based upon mere speculation that our courts may have to exercise their discretion more often in the future.

The judgment of the district court will be affirmed except as to the award for non-pecuniary damages. As to the non-pecuniary damages, the judgment of the district court will be

vacated and the case remanded to the district court to redetermine those damages in accordance with Indian law. Two-thirds of plaintiffs' costs will be taxed against the defendants.

_____